[Nos. 41738-0-I; 42063-1-I.    Division One.    September 7, 1999.]
THE STATE OF WASHINGTON, *Respondent*, v. JOHN MELTON, *Appellant*.

*Stella S. Buder* of *Washington Appellate Project*, for appellant.

*Norm Maleng, Prosecuting Attorney*, and *Charles W. Lind, Deputy*, for respondent.

PER CURIAM — After jeopardy attached in John Melton's first prosecution for robbery and assault, the trial court declared a mistrial due to defense counsel's absence from trial due to illness. When his second trial commenced, Mel-

ton unsuccessfully moved to dismiss on the ground that further prosecution was barred by double jeopardy. A jury subsequently convicted him of first degree robbery, and he appeals. Because the court did not abuse its discretion in declaring a mistrial, we affirm.

The State charged Melton with first degree robbery and second degree assault. After the completion of pretrial motions, jury selection began on Wednesday, October 22, 1997. During voir dire, the court advised the prospective jurors that the trial would last approximately three days. Several prospective jurors apparently indicated that they could serve through the following Monday, but no longer. The jurors were informed the case would likely conclude by that time. Thereafter, the jury was sworn and the State called a number of witnesses before the court recessed for the weekend.

The following Monday, defense counsel was sick and so advised the court. The trial judge spoke to counsel by telephone at approximately 4 P.M. that day. During that conversation, defense counsel assured the court that he would be in court the next morning and ready to proceed. But the next morning, counsel left a 7:30 A.M. message on the court's answering machine stating that he was ill and unable to attend court. The record does not indicate if he gave any estimate of when he or someone else would return to court to proceed with the case. The record reflects that the court declared a mistrial with Melton and the State's counsel present in court:

> I have declared a mistrial and dismissed the jury. We have a jury that clearly had time problems through the voir dire. And I don't think we can ask them to just stay indefinitely, coming down here every morning. So I have declared a mistrial, and we will take this case up as soon as both counsel are available and healthy.

Melton, who was without the assistance of counsel at that point, neither consented nor objected to the mistrial. He argued unsuccessfully that the case should be dismissed.

On November 4, 1997, defense counsel returned to court and stated his objections to the mistrial. In explaining its earlier ruling, the court stated:

> I determined that the jury as a body had been told that this case would take three days. We brought them down here two straight days and we weren't in a position to go forward with trial, and I determined that a mistrial was a proper remedy since we have all kinds of problems retaining our jurors.
>
> During voir dire my recollection is that a number of them indicated that they would be okay through about—we told them we were going to conclude the case on Monday, and we were already into beginning maybe on Wednesday, and that's when I determined to declare a mistrial. I don't think we can keep our jurors on indefinite hold. I think they have a finite amount of time, and that's why I declared a mistrial.

The court also stated:

> I do take very seriously the commitments that jurors make to us, and when they do take time out of their jobs and their lives and they express that during the voir dire and they indicate that they're suffering financial loss as well as personal inconvenience by being here and we indicate to them that we predict that a case will be over in a certain period of time, I take that as a very serious commitment to them, and when the case was delayed for a day and it looked like we could assure them that we'd be able to begin on Tuesday and not miss more than a day, I felt we should just continue it and proceed with it. But when it was extended to two days and it wasn't certain in my mind at all that it would be over in two days, we already had some jurors during voir dire indicate that going as far as Wednesday was going to create a problem for them and we were looking at concluding the case by maybe Thursday or even Friday. And that's the reason that I declared the mistrial.

Melton subsequently moved to dismiss on double jeopardy grounds when a new jury was empanelled and a new trial started. In denying the motion, the court repeated the reasons it had previously given for granting a mistrial, but added the following:

> When [defense counsel] became ill . . . we sent the jurors

home. The jurors . . . , as I understand it, expressed their displeasure to the bailiff because they had come all the way out here and they had to go all the way home, no one had contacted them in advance. I had the bailiff assure them that we would be prepared to go the next day and to finish up the trial. [Defense counsel] had indicated to me that he believed that he would be well enough the next day to be here. . . . We told the jurors to come back on Tuesday. The jurors did come back on Tuesday. Unfortunately, [defense counsel] was still ill. I did not feel at that point that we could have any kind of assurance that we would be able to go forward on Wednesday morning. . . . And it seemed to me that I couldn't represent to the jurors with any kind of certainty that if they came back Wednesday morning we would be able to go, so I unilaterally declared a mistrial.

The jury subsequently convicted Melton of first degree robbery. He appeals.

## MANIFEST NECESSITY

Melton contends the court abused its discretion in declaring a mistrial because it failed to consider his constitutional right to the particular tribunal, did not afford the parties an opportunity to be heard, and failed to consider other alternatives. We disagree.

■■ When a mistrial is granted without the defendant's consent and after jeopardy has attached, a retrial is barred by double jeopardy principles unless the mistrial was justified by a "manifest necessity."[1] The failure to make express findings on manifest necessity is not necessarily fatal.[2] The trial judge is "vested with broad discretionary power to determine whether a trial should be aborted prior

---

[1]*State v. Graham*, 91 Wn. App. 663, 667, 960 P.2d 457 (1998); *State v. Eldridge*, 17 Wn. App. 270, 276-78, 562 P.2d 276 (1977), *review denied*, 89 Wn.2d 1017 (1978).

[2]*Arizona v. Washington*, 434 U.S. 497, 516-17, 98 S. Ct. 824, 837, 54 L. Ed. 2d 717 (1978).

to verdict."[3] A court considering a mistrial must, however, engage in a " 'scrupulous exercise of judicial discretion' "[4] before foreclosing a defendant's " 'valued right to have his trial completed by a particular tribunal.' "[5] "If discretion is not exercised or is exercised improperly, a mistrial is tantamount to an acquittal and frees the defendant from further prosecution."[6] The court's decision is normally accorded great deference.[7]

■ Several guiding principles have emerged for determining whether a judge exercised sound discretion in granting a mistrial for "manifest necessity." They include (1) whether the court "act[ed] precipitately . . . [or] gave both defense counsel and the prosecutor full opportunity to explain their positions";[8] (2) whether it "accorded careful consideration to [the defendant's] interest in having the trial concluded in a single proceeding";[9] and (3) whether it considered alternatives to declaring a mistrial.[10]

---

[3]*Eldridge*, 17 Wn. App. at 276-77.

[4]*State v. Browning*, 38 Wn. App. 772, 775, 689 P.2d 1108 (1984) (quoting *United States v. Jorn*, 400 U.S. 470, 485, 91 S. Ct. 547, 558, 27 L. Ed. 2d 543 (1971)).

[5]*Arizona v. Washington*, 434 U.S. at 519 (quoting *Wade v. Hunter*, 336 U.S. 684, 689, 69 S. Ct. 834, 837, 93 L. Ed. 974 (1949)).

[6]*Browning*, 38 Wn. App. at 775.

[7]*State v. Jones*, 26 Wn. App. 1, 5, 612 P.2d 404, *review denied*, 94 Wn.2d 1013 (1980).

[8]*Arizona v. Washington*, 434 U.S. at 515-16. *See also Browning*, 38 Wn. App. at 776 (noting that trial court had given neither counsel an opportunity to explore or suggest solutions other than a mistrial); *Brady v. Samaha*, 667 F.2d 224 (1st Cir. 1981) (abuse of discretion where mistrial declared abruptly without input from either standby defense counsel or the prosecutor); *United States v. Starling*, 571 F.2d 934 (5th Cir. 1978); *Vega v. United States*, 709 A.2d 1168 (D.C. 1998) (defense counsel should be accorded meaningful participation and hearing); *United States v. Lynch*, 598 F.2d 132, 136 (D.C. Cir. 1978) ("[t]he nature of the adversary process requires that defense counsel be accorded a meaningful participation and hearing, rather than a cursory opportunity to comment, in a decision to declare a mistrial based on manifest necessity. The decision is of great significance, involving as it does the defendant's constitutional right to be protected from double jeopardy.").

[9]*Arizona v. Washington*, 434 U.S. at 516.

[10]*See, e.g., United States v. Jorn*, 400 U.S. 470, 487, 91 S. Ct. 547, 558, 27 L. Ed. 2d 543 (1971).

Here, the record confirms that the court did not contact ailing defense counsel or determine whether substitute counsel would be available to address the question of declaring a mistrial. Nor did the court expressly acknowledge, at the time it declared a mistrial, that double jeopardy was an issue.[11] But while these omissions involve important aspects of a mistrial decision, they do not, under these facts, demonstrate an abuse of discretion.

■ In evaluating the manner in which the trial court exercised its discretion, the fundamental question is whether it acted in a precipitate or unreasoning fashion.[12] It did not. The court took a considered approach to defense counsel's absence. It waited beyond the projected date for the trial to end before determining that a mistrial was necessary. And then it declared a mistrial only because it was unclear when defense counsel would return and there was a likelihood of adverse juror reaction if the case were continued indefinitely. Melton contends any inconvenience to the jurors was insufficient to demonstrate a "manifest necessity" because the court assumed, without polling the jury, that hardships anticipated by jurors during voir dire had in fact materialized.[13] This contention is unreviewable because Melton has not provided us a transcript of voir dire.[14] Without it, we can only speculate about the precise nature of the jurors' hardships or the likelihood that their situations could have changed by the time the court made

---

[11]*See Arizona v. Washington*, 434 U.S. at 501, 515 (noting that trial judge had expressed concern over the possible double jeopardy consequences of an erroneous mistrial ruling).

[12]*See id.* at 514-15.

[13]Melton does not contend that juror inconvenience or hardship is an insufficient basis for finding a manifest necessity. We note, in that regard, that we upheld a mistrial based on similar juror hardships in *State v. Eldridge*, 17 Wn. App. at 275-78. *See also State v. Jones*, 26 Wn. App. at 5-6.

[14]An appellant has the burden of providing a record sufficient to review the issues raised. *State v. Garcia*, 45 Wn. App. 132, 140, 724 P.2d 412 (1986); *State v. Slemmer*, 48 Wn. App. 48, 57, 738 P.2d 281 (1987).

its decision. It is thus impossible, on this record, to review the court's decision to proceed without polling the jury.

While it certainly would have been preferable for the court to contact defense counsel or substitute defense counsel and to consider alternatives on the record, there was little to be gained from those procedures here. Nothing in the record supports a conclusion that practical alternatives to a mistrial existed or that counsel could have advanced legitimate challenges to the court's recollection of the jurors' hardships. In short, there is no basis to conclude that counsel's input or an express consideration of alternatives would have made any difference in this case.

Similarly, it would have been better for the court to expressly acknowledge Melton's interest in having the case tried in a single proceeding before the empanelled jury. But again, it is abundantly clear that this would not have altered the court's decision. The court had already delayed taking action for as long as it felt it reasonably could. With no guarantee that defense counsel would return soon, and faced with the prospect of proceeding well beyond the limits set by jurors during voir dire, the court clearly felt the jurors could be pushed no further without risking their resentment and disaffection. This was a tenable basis for the court to take the action it did.[15] The trial court did not abuse its discretion in declaring a mistrial.

Affirmed.

---

[15]*See* footnote 12.