IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 34977-2-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ROBERTO DIAZ-LARA, aka | ) | UNPUBLISHED OPINION |
| RIGOBERTO DIAZ, aka ROBERTO | ) | |
| DIAZ, | ) | |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, J. — In 2014, following a week of trial and eight hours of deliberation, the trial court declared a mistrial in the State's prosecution of Roberto Diaz-Lara for six counts of first degree child molestation. Over the objection of the State and the defendant, the court found that the jury was hopelessly deadlocked and there was no reasonable possibility that further deliberations would result in a verdict. On retrial of

three of the counts, the jury found Mr. Diaz-Lara guilty and returned special verdicts

finding aggravating factors, on the basis of which the trial court imposed an exceptional

sentence upward.

Mr. Diaz-Lara appeals, arguing (1) the second trial subjected him to double

jeopardy, (2) the trial court's instruction defining a term used in two of three aggravating

factors charged in support of an exceptional sentence was a comment on the evidence,

and (3) the trial court's reasonable doubt instruction violated his right to a jury trial. The

trial court definition challenged by Mr. Diaz-Lara has since been found by our Supreme

Court to constitute a comment on the evidence, but remand for resentencing is not

required because we are satisfied the trial court would have imposed the same sentence

based on an aggravating factor we uphold. Finding no other error, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

Roberto Diaz-Lara was prosecuted in 2014 for six counts of first degree child

molestation, three involving his stepdaughter, who was 19 years old at the time of trial,

and three involving his biological daughter, who was 11 years old at that time. The

alleged abuse came to light in early 2012, when the older girl—then 16—turned in an

essay at school in which she claimed to have been molested and raped. She and her

younger sister were removed from their home and placed in foster care. While in foster

care, the younger girl told her foster mother that she, too, had been molested by her

2

father. She repeated the charges when interviewed by a child abuse pediatrician and a forensic interviewer.

By the time of Mr. Diaz-Lara's first, 2014 trial, the then 11-year-old had recanted. She testified that her older sister told her "to say stuff" and told her "that hugging and giving a kiss on the cheek was bad." Report of Proceedings (RP) at 693. The defense theory at this first trial was that the 16-year-old had become sexually involved with an adult boyfriend, was worried Mr. Diaz-Lara might "throw [her boyfriend] in jail" if he found out, wanted to get out of her home, and "told a story" so that would happen. RP at 1381-82. Defense counsel argued that the older girl's story about the molestation was "inconsistent and . . . ever-changing," and asked the jury to believe the younger girl's testimony that she had gone along with her sister's story even though her father never touched her inappropriately. RP at 1380.

After the close of evidence and eight hours of deliberation, the jury submitted the following note to the trial court: "We cannot come to an agreement on any of all 6 counts. We are split." Clerk's Papers (CP) at 879. The trial court called the jury back into the courtroom and inquired whether there was a reasonable probability of reaching a verdict in a reasonable time. When the presiding juror answered no, the trial court declared a mistrial over objections from the State and Mr. Diaz-Lara, both of whom wanted the jury to be directed to deliberate for at least a few additional hours.

3

Within about a week after the mistrial was declared, the State moved to sever the three counts that involved the older daughter, asking the court to dismiss them without prejudice. With its motion granted, the State filed a new information charging only the three counts of molestation of the younger daughter, alleged that the crimes were committed against her between April 7, 2007 (the girl's fourth birthday) and February 3, 2012 (three days before the sisters were removed from their home and placed in foster care). The State had alleged aggravating factors in charging the crimes before, and now alleged three aggravating factors—that

- the offense was part of an ongoing pattern of sexual abuse of the same victim under the age of eighteen years manifested by multiple incidents over a prolonged period of time (RCW 9.94A.535(3)(g)),

- the offense was part of an ongoing pattern of psychological, physical, or sexual abuse of a victim or multiple victims manifested by multiple' incidents over a prolonged period of time (RCW 9.94A.535(3)(h)(i)), and

- the defendant used his position of trust, confidence, or fiduciary responsibility to facilitate the commission of the current offense. (RCW 9.94A.535(3)(n)).

CP at 1-2.

In the second trial, both parties agreed that the older girl's claims about being abused by Mr. Diaz-Lara should not be admitted. The trial court warned that if the defense elicited evidence that the younger girl was coached to make allegations by her older sister, it would open the door to evidence about the alleged abuse of the older sister. Faced with the choice, defense counsel acknowledged, "I might just have to sit with the fact that there's a recantation, and that's it." RP at 1461. Much less information about

4

how the allegations came to light or the younger girl's conversations with her older sister was presented to the second jury.

Among the jury instructions given in both trials was the Washington pattern instruction on reasonable doubt, including its optional statement that if after fully, fairly, and carefully considering all of the evidence "you have an abiding belief in the truth of the charge, you are satisfied beyond a reasonable doubt." CP at 932 (Instruction 3); 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL (WPIC) 4.01, at 85 (3d ed. 2008). The court also instructed the jury, in connection with the two "ongoing pattern of . . . abuse" aggravating factors it would consider, that "[a]n 'ongoing pattern' means multiple incidents over a prolonged period of time," and "[t]he term 'prolonged period of time' means more than a few weeks." CP at 949 (Instruction 19). Mr. Diaz-Lara made no objection to these instructions.

The second jury found Mr. Diaz-Lara guilty of all three counts of first degree child molestation, and by special verdict, found all three aggravators on each count.

At sentencing, the trial court imposed a minimum sentence of 154 months' confinement—a 24-month increase from the standard range, based on the aggravating factors. In announcing its sentence, the court observed that the jurors had unanimously found not only that Mr. Diaz-Lara was guilty, but also the three aggravating factors charged by the State, stating, "I will sentence you accordingly." RP at 2129-30. It then

5

made the following comment about the aggravating factors that involved an ongoing

pattern of abuse:

> The factors of ongoing pattern of abuse, to some extent, I discount, not because they aren't serious, but because they are factored into the offender score of six, which you received for being convicted of multiple counts.

RP at 2130. Asked by the prosecutor if the court would indicate on the judgment and

sentence a finding that the same sentence would be imposed if any one of the aggravating

factors was not upheld on appeal, it answered, "I would," and thereafter did. RP at 2132.

Mr. Diaz-Lara appeals.

## ANALYSIS

### *I. Double jeopardy*

Mr. Diaz-Lara's first assignments of error are to the trial court declaring a mistrial

and discharging the first jury over his objection, which he contends violated both state

and federal constitutional rights to be free from double jeopardy. *See* U.S. CONST.

amend. V; WASH. CONST. art. I, § 9. A double jeopardy claim raises manifest

constitutional error and may be raised for the first time on appeal. *State v. Kassahun*, 78

Wn. App. 938, 948, 900 P.2d 1109 (1995). The parties disagree about two legal issues

that are key to our review of this alleged error: they disagree whether the standard of

review is de novo or abuse of discretion, and disagree whether steps a trial court must

take to avoid terminating jeopardy identified in *State v. Robinson*, 146 Wn. App. 471,

6

191 P.3d 906 (2008), apply only where the State moves for a mistrial, or apply any time a mistrial is declared over a defendant's objection.

We agree with Mr. Diaz-Lara that the steps identified in *Robinson* apply where he objected to the mistrial.

Federal and state constitutional protections "not only protect a criminal defendant from a second prosecution for the same offense after conviction or acquittal, and from multiple punishments for the same offense, but also the 'valued right [of the defendant] to have his trial completed by a particular tribunal.'" *State v. Jones*, 97 Wn.2d 159, 162, 641 P.2d 708 (1982) (alteration in original) (citation omitted) (quoting *Arizona v. Washington*, 434 U.S. 497, 503 n.11, 98 S. Ct. 824, 54 L. Ed. 2d 717 (1978)). The United States Supreme Court in *Washington* repeated the reasons why a defendant's right to have his trial completed by a particular tribunal is valued:

> Even if the first trial is not completed, a second prosecution may be grossly unfair. It increases the financial and emotional burden on the accused, prolongs the period in which he is stigmatized by an unresolved accusation of wrongdoing, and may even enhance the risk that an innocent defendant may be convicted. The danger of such unfairness to the defendant exists whenever a trial is aborted before it is completed. Consequently, as a general rule, the prosecutor is entitled to one, and only one, opportunity to require an accused to stand trial.

*Washington*, 434 U.S. at 503-05 (footnotes omitted). Unlike in the situation where a trial has ended in an acquittal or conviction, however, retrial is not automatically barred when a criminal proceeding is terminated by the declaring of a mistrial, since the circumstances

7

that lead a court to declare a mistrial do not invariably create unfairness to the accused.

*Id.* at 505. Yet, as explained by the Supreme Court,

> in view of the importance of the right, and the fact that it is frustrated by any mistrial, the prosecutor must shoulder the burden of justifying the mistrial if he is to avoid the double jeopardy bar. His burden is a heavy one. The prosecutor must demonstrate "manifest necessity" for any mistrial declared over the objection of the defendant.

*Id.*

In *Robinson*, during the third day of trial and well before the jury was to deliberate, the prosecutor repeated to the court the bailiff's report that "the jury" wanted to see a document that had been described by a witness. 146 Wn. App. at 475 n.2. The State moved for a mistrial on the basis of juror misconduct because "[o]bviously, the jury is not following the court's instruction that they not discuss the case." *Id.* Without questioning the bailiff or any juror, the court granted the request for a mistrial over the defendant's objection. *Id.* When the defendant was convicted at a second trial, he argued that double jeopardy barred his retrial. *Id.* at 477.

This court agreed, expressing concern that by not developing a record, the trial court had not determined that misconduct *had* occurred or that there were not alternatives to declaring a mistrial. *Id.* at 481-82. Quoting *State v. Melton*, 97 Wn. App. 327, 983 P.2d 699 (1999), it identified three factors considered to determine whether a mistrial was based on manifest necessity:

8

> (1) whether the court 'act[ed] precipitately [or] gave both defense counsel and the prosecutor full opportunity to explain their positions'; (2) whether it 'accorded careful consideration to the [defendant's] interest in having the trial concluded in a single proceeding'; and (3) whether it considered alternatives to declaring a mistrial.

*Robinson*, 146 Wn. App. at 479-80 (alterations in original) (quoting *Melton*, 97 Wn. App. at 332). The *Robinson* court sometimes referred to the "manifest necessity" requirement and the three factors as applying to "a mistrial without the defendant's consent"; elsewhere, it referred to them applying "[w]hen the State seeks a mistrial over the defendant's objection." *Id.* at 479. Based on these latter references, the State argues that it is only if the State moves for the mistrial—which it did not do here—that the factors bearing on manifest necessity are reviewed.

We disagree. As Mr. Diaz-Lara points out, the State did not move for a mistrial in *Melton*, in which the trial court declared a mistrial due to defense counsel's illness and without affording "the parties" an opportunity to be heard. 97 Wn. App. at 331. This court stated that "manifest necessity" must be found "[w]hen a mistrial is granted *without the defendant's consent.*" *Id.* (emphasis added). There must be a "manifest necessity" to declare a mistrial any time it is declared over the defendant's objection. The only difference between the case where the State moves for mistrial and where the court acts on its own is that if the State moves for the mistrial, it must shoulder the "heavy burden" on appeal of justifying the mistrial. *Washington*, 434 U.S. at 505. Where a judge acts sua sponte, it is the judge who "must similarly make sure, and must enable a reviewing

9

court to confirm, that there is a '"manifest necessity"' to deprive the defendant of his valued right." *Renico v. Lett*, 559 U.S. 766, 782, 130 S. Ct. 1855, 176 L. Ed. 2d 678 (2010) (citing *Washington*, 434 U.S. at 505) (Stevens, J., dissenting); *accord United States v. Rivera*, 384 F.3d 49, 56 (3d Cir. 2004) (reviewing whether the trial court failed to consider reasonable alternatives to a mistrial even where the government opposed the mistrial).

We agree with the State, however, that our review of the trial court's decision to declare a mistrial is reviewed for abuse of discretion, not de novo. Many reported state and federal cases addressing double jeopardy in the context of a second trial following a mistrial observe that appellate courts give "'[g]reat deference'" to the trial court's decision to declare a mistrial. *E.g.*, *State v. Strine*, 176 Wn.2d 742, 753, 293 P.3d 1177 (2013) (alteration in original) (quoting *Jones*, 97 Wn.2d at 163); *Washington*, 434 U.S. at 510; *State v. Taylor*, 109 Wn.2d 438, 443, 745 P.2d 510 (1987)). Respect for a trial court's broad discretion is "'especially compelling'" in cases involving a potentially hung jury because "'the trial court is in the best position to assess all the factors which must be considered in making a necessarily discretionary determination whether the jury will be able to reach a just verdict if it continues to deliberate.'" *Renico*, 599 U.S. at 774 (quoting *Washington*, 434 U.S. at 510 n.28); *Strine*, 176 Wn.2d at 754. The case Mr. Diaz-Lara cites as supporting de novo review involved concerns about double jeopardy arising in a different context: a defendant receiving multiple punishments in a single trial

10

for the same offense. *State v. Villanueva-Gonzalez*, 180 Wn.2d 975, 979-80, 329 P.3d 78 (2014). In that context, courts are presented with what is "ultimately 'a question of statutory interpretation and legislative intent,'" making de novo review appropriate. *Id.* at 980 (quoting *State v. Adel*, 136 Wn.2d 629, 634, 965 P.2d 1072 (1998)).

"In determining whether a jury is deadlocked, the judge may consider the length of jury deliberations relative to the length of the trial and the complexity of issues and evidence. . . . [and] the court may rely upon the representations of the presiding juror regarding whether the jury is deadlocked." *State v. Barnes*, 85 Wn. App. 638, 656-57, 932 P.2d 669 (1997). There is no minimum period of time a jury must deliberate before a jury determines it is deadlocked provided it is genuinely deadlocked. *See Renico*, 599 U.S. at 775-76 (holding that a trial court did not abuse its discretion when it declared a mistrial after the presiding juror stated that a unanimous verdict could not be reached); *Strine*, 176 Wn.2d at 756, *cf. Jones*, 97 Wn.2d at 160-61, 165-66 (finding the grant of a mistrial—after the jury had deliberated well into the middle of the night—was an abuse of discretion where there was no indication of a deadlock and the jury simply needed more time to deliberate).

In this case, the trial court did not initiate dialogue about the progress of the jury's deliberation; it acted only after the jury notified the court it was deadlocked. The jury had been deliberating for eight hours. Following the language in WPIC 4.70 almost

verbatim,[1] the trial court asked the presiding juror if there was any reasonable possibility that the jury would reach a verdict within a reasonable amount of time, to which the juror answered, unqualifiedly, "No." RP at 1402. Sending the jury back to deliberate while it considered what to do, the trial court gave both defense counsel and the prosecutor a full opportunity to explain their positions, and then allowed defense counsel to speak privately with Mr. Diaz-Lara, so as to understand his wishes as well. The trial court clearly considered the alternative of further deliberations, since it acknowledged that option when it told the parties it did not believe another half an hour or another hour would make a difference. It attached importance to the fact that the presiding juror's note indicated that no progress was being made on any count. Considering the factors identified in *Robinson*, we find no abuse of discretion in the trial court's determination that there was a manifest necessity to declare a mistrial.

## *II. Instructional error*

### Defining "a prolonged period of time"

The trial court's instructions on the meaning of an "ongoing pattern of sexual abuse" for purposes of the aggravating factors charged under RCW 9.94A.535(3)(g) and (h)(i) was based on a former version of what is now WPIC 300.16. The former version included the statement, "'prolonged period of time' means more than a few weeks.'"

---

[1] *See* 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 4.70, at 142 (3d ed. 2008).

11A WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 300.17, at 719 (3d ed. 2008). In *State v. Brush*, 183 Wn.2d 550, 557, 353 P.3d 213 (2015), our Supreme Court held that the former WPIC was an unlawful comment on the evidence, violating article IV, section 16 of the Washington Constitution ("Judges shall not charge juries with respect to matters of fact, nor comment thereon, but shall declare the law."). A challenge to a court's comment on the evidence is a manifest constitutional error that can be raised for the first time on appeal. RAP 2.5(a)(3); *State v. Levy*, 156 Wn.2d 709, 719-20, 132 P.3d 1076 (2006).

The State concedes it was error to define "prolonged period of time" as the trial court did, but argues it was harmless because the evidence presented was of abuse occurring over years. It also argues that we can affirm the sentence based on the finding in the judgment and sentence that the same sentence would be imposed based on the jury's finding that Mr. Diaz-Lara used a position of trust or confidence to facilitate the commission of the crimes.

We agree with Mr. Diaz-Lara that given the victim's recantation, this is not a case in which we can confidently infer which acts the jury believed occurred, and therefore that they occurred over a sufficiently prolonged period of time. Jurors might have found some of the evidence of molestation credible, but not all of it. But we agree with the State that in light of the trial court's oral statements and indication on the judgment and

13

sentence that the same sentence would be imposed if any one of the aggravating factors is not upheld on appeal, there is no need to remand for resentencing.

Mr. Diaz-Lara disagrees, citing *State v. Weller*, 185 Wn. App. 913, 930, 344 P.3d 695 (2015), *review denied*, 188 Wn.2d 1017, 396 P.3d 337 (2017), in which the trial court stated that either of two aggravating factors *independently provided authority* for an exceptional sentence, but without saying it would impose the *same length* exceptional sentence based on one factor standing alone. Given the lack of clarity, this court remanded. Mr. Diaz-Lara's judgment and sentence does not suffer from that infirmity; it specifically says that "the same sentence would be imposed" in the event of reversal of a factor on appeal. CP at 960. Mr. Diaz-Lara nonetheless argues that the judgment and sentence speaks only of what the court would do "if any *one* of the aggravating factors is not upheld on appeal," RP at 2132 (emphasis added), not what it would do "if any *two*" are not upheld.

Whether remand is required in a case like this does not turn on whether a trial court's statement about consequences of reversal on appeal can withstand all defense parsing. We can take into consideration other evidence of the trial court's thinking. The question is whether we are "satisfied that the trial court would have imposed the same sentence based upon a factor or factors that are upheld," in which case we may uphold the exceptional sentence rather than remanding for resentencing." *State v. Jackson*, 150 Wn.2d 251, 276, 76 P.3d 217 (2003) (emphasis added). Here, we have the court's

14

explicit statement that it discounted the "ongoing pattern" aggravators, clearly implying

that Mr. Diaz-Lara's violation of a position of trust or confidence was the more important

reason for imposing an exceptional sentence. We are satisfied it would have imposed the

same exceptional sentence based on that finding alone.

### WPIC 4.01

Mr. Diaz-Lara assigns error to the trial court's reasonable doubt jury instruction,

which was based on WPIC 4.01. He objects in particular to its statement, "If, from such

consideration, you have an abiding *belief in the truth of the charge*, you are satisfied

beyond a reasonable doubt." CP at 932 (Instruction 3) (emphasis added). He claims the

highlighted language directs the jury to engage in a search for the truth, undermining the

presumption of innocence and impermissibly shifting the burden of proof.

All three divisions of this court have upheld the challenged language "reasoning

that WPIC 4.01's 'belief in the truth' language, when read in context, accurately informs

the jury that its role is to determine whether the State has proved its case beyond a

reasonable doubt." *State v. Muse*, No. 34056-2-III, slip op. at 10 (Wash. Ct. App. Jan.

19, 2017) (unpublished), https://www.courts.wa.gov/opinions/pdf/340562_unp.pdf

(Division Three);[2] *State v. Jenson*, 194 Wn. App. 900, 902, 378 P.3d 270 (Division Two),

---

[2] We would not ordinarily point to an unpublished opinion of our division. In this context, the decision not to publish *Muse*—like our decision not to publish this opinion—reflects the well settled validity of the challenged language in WPIC 4.01.

15

*review denied*, 186 Wn.2d 1026, 385 P.3d 119 (2016); *State v. Fedorov*, 181 Wn. App. 187, 200, 324 P.3d 784 (Division One), *review denied*, 181 Wn.2d 1009, 335 P.3d 941 (2014). All three divisions have rejected defense arguments that WPIC 4.01's language is problematic under *State v. Emery*, 174 Wn.2d 741, 278 P.3d 653 (2012), as Mr. Diaz-Lara argues here. *Muse*, No. 34056-2-III, slip op. at 10; *Jenson*, 194 Wn. App. at 902; *Fedorov*, 181 Wn. App. at 199-200.

No instructional error is shown.

### *III.* Appellate costs

Mr. Diaz-Lara asks us to waive costs on appeal if he does not prevail, claiming he is currently indigent and will unlikely be able to pay in the future. "RAP 14.2 affords the appellate court latitude in determining if costs should be allowed." *State v. Nolan*, 141 Wn.2d 620, 626, 8 P.3d 300 (2000). By general order, this court has created a procedure by which appellants may provide a panel with evidence and argument on the basis of which the panel can exercise informed discretion whether to deny costs. See Gen. Order of Division III, *In re the Matter of Court Administration Order re: Request to Deny Cost Award* (Wash. Ct. App. June 10, 2016). Because this case was transferred from Division Two, Mr. Diaz-Lara (understandably) did not comply with our general order. We therefore decline to consider his request, but without prejudice to his right to demonstrate to our commissioner his current or likely future inability to pay. *See* RAP 14.2.

No. 34977-2-III
*State v. Diaz-Lara*

Affirmed.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Siddoway, J.

WE CONCUR:

_____
Fearing, C.J.

_____
Pennell, J.