IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 35370-2-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JERREMY JOE GMEINER, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

KORSMO, J. — Jerremy Gmeiner appeals from a conviction on one count of first degree child molestation, arguing that the trial court prematurely declared a mistrial when the first jury was unable to reach a verdict and that errors at the second trial require a third trial. Since there was no significant error, we affirm.

FACTS

Mr. Gmeiner was accused of molesting his niece, three-year-old A.G., the daughter of his sister, S.G. Prior to the incident, Mr. Gmeiner had lived with his sister and her family for about a year and was good friends with them. He no longer lived with the family, but had come over to the house to get a massage from S.G., a licensed massage therapist and physical therapist.

Mr. Gmeiner, his sister, and A.G. were in the living room, with the adults conversing and the child playing with her uncle. After a time, Mr. Gmeiner stopped talking to S.G. and she believed he was staring lustfully at her daughter. Then she heard her son scream hysterically from the basement and ran to help him. Returning a short time later, she observed her brother and daughter together in the living room.

He was kneeling, with A.G. between his legs, and their foreheads were touching. He had his hand in his shorts and appeared to be masturbating on the child's abdomen and vagina by gyrating his hips back and forth; his penis was not exposed, but appeared erect. S.G. saw the incident in profile from his right side; she could not see what the left hand was doing. Her brother's breathing was heavy and he was moaning.

S.G. stepped between her brother and her daughter, and he turned "ghost white" and stood up. She ordered him out of the house and threatened to call 911 if he did not immediately leave. He asked her what she thought she saw. She told him he had been masturbating with the three-year-old. He did not respond to the statement and left. Outside, she saw his hand in his pants and believed he still had an erection.

Mr. Gmeiner later spoke with law enforcement. He told a deputy sheriff that A.G. had accidentally kicked him in the groin. He was trying to rearrange his shorts when his sister returned to the room and saw his hand in his pants. He denied having an erection or making any contact with the child in the manner S.G. described.

2

S.G.'s mother arrived from Montana that evening in response to a telephone call about the incident. Hearing her mother and grandmother talking, A.G. asked her mother, "You're mad at Jerremy, Mom?" Report of Proceedings (RP) at 788. S.G. responded that she was mad and asked if the child knew why. In response, A.G. stated, "Yes, because Jerremy touched my butt." *Id.* S.G. later would testify that the child used the word "butt" to describe her entire genital area.

A single charge of first degree child molestation was filed against Mr. Gmeiner, and the matter proceeded to jury trial in the Spokane County Superior Court. The court conducted a child hearsay hearing prior to the first trial. The parties "stipulated" that A.G., whom they had interviewed, was unavailable to testify. RP at 78. S.G. was the only witness at the hearing. After hearing argument, the court applied the criteria for assessing the admissibility of child hearsay under RCW 9A.44.120 and determined that A.G.'s statement to her mother bore sufficient indicia of reliability to be admitted. RP at 78-81; Clerk's Papers (CP) at 100-104. A.G. was determined to be unavailable, but there was corroboration of her statement.

The case proceeded to trial, with both S.G. and Mr. Gmeiner testifying about their version of the event. Trial ended on the second morning and the jury began deliberations around 11:30 a.m. The jury alerted the court around 3:00 p.m. that it was unable to agree. After consultation with the attorneys, the court brought the jurors into the courtroom and asked the presiding juror if there was a probability of the jury reaching an agreement

3

within a reasonable time. The foreman answered, "No. No." RP at 501. The jurors returned to the jury room. Defense counsel then asked the court to declare a mistrial. RP at 502. The request was granted. RP at 502-503; CP at 47-48.

Prior to the second trial, the court readopted its rulings from the first trial. RP at 523. Testimony at the second trial was similar to the first trial, but this time the State called A.G.'s grandmother to testify; she corroborated S.G.'s version of the child's disclosure. During direct examination of the investigating detective, the prosecutor asked, without objection, whether he found any evidence of a motive for S.G. to fabricate a story against her brother. The detective answered that he did not. RP at 848.

Mr. Gmeiner again testified concerning his version of the event. During cross-examination, he told the prosecutor that he had a good relationship with his sister and agreed that she had no reason to fabricate a story against him. The prosecutor then asked: "So the testimony coming from [S.G.], then, is in your view what she believes to be the truth?" RP at 954. Defense counsel objected on the basis that the question called for a comment on the testimony; the court directed the prosecutor to rephrase the question. The prosecutor then asked, "Well, do you believe that [S.G.'s] lying about you?" *Id.* After a nonspecific objection was made, the court permitted the answer. Mr. Gmeiner testified that he did not believe she was trying to lie. RP at 955. When questioned a bit more, without any objection, he was asked why he thought his sister was lying. He answered that "I don't think she's on purpose lying. But she doesn't recall it the way I

4

recall it." *Id*. He also agreed with the prosecutor's suggestion that S.G. also had not recalled the incident properly when she reported it. *Id*.

The parties argued the case to the jury on their respective theories of what happened. The jury determined that Mr. Gmeiner committed the offense. After sentence was imposed, he timely appealed to this court.

ANALYSIS

The appeal raises four[1] issues: a claim of double jeopardy resulting from the mistrial ruling, various alleged errors impacting the child hearsay ruling, ineffective assistance of counsel, and prosecutorial misconduct.[2] We address those claims in the order listed.

*Double Jeopardy*

Mr. Gmeiner initially argues that the trial court erred in granting his motion for a mistrial, resulting in a violation of his protection against double jeopardy. There was no error and, hence, no double jeopardy.

---

[1] Appellant also contends that cumulative error requires a new trial, but since we do not find multiple errors, we do not address that claim.

[2] Mr. Gmeiner also filed a statement of additional grounds, which we do not address because it is both duplicative of an argument raised by counsel and also makes a claim outside the record of the trial. RAP 10.10(a). Mr. Gmeiner's remedy, if any, is to marshal the evidence he has in support of his claims and present them in a personal restraint petition. *See, e.g.*, *State v. McFarland*, 127 Wn.2d 322, 338 n.5, 899 P.2d 1251 (1995); *State v. Norman*, 61 Wn. App. 16, 27-28, 808 P.2d 1159 (1991).

We review a trial court's ruling on a motion to declare a mistrial for abuse of discretion. *State v. Weber*, 99 Wn.2d 158, 166, 659 P.2d 1102 (1983). "The question is not whether this court would have decided otherwise in the first instance, but whether the trial judge was justified in reaching his conclusion." *State v. Taylor*, 60 Wn.2d 32, 42, 371 P.2d 617 (1962). Discretion is abused when it is exercised on untenable grounds or for untenable reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971). Discretion also is abused when it is exercised contrary to law. *State v. Tobin*, 161 Wn.2d 517, 523, 166 P.3d 1167 (2007).

Reviewing courts have determined several guidelines for reviewing mistrial rulings. *State v. Melton*, 97 Wn. App. 327, 332, 983 P.2d 699 (1999). These include: (1) whether the trial court acted hastily, or gave both parties an opportunity to explain their positions, (2) whether it carefully considered the defendant's interest in a single proceeding, and (3) whether it considered less drastic alternatives. *Id*. A trial court has broad discretion in deciding whether or not to allow a potentially deadlocked jury to continue or end its deliberations. *State v. Jones*, 97 Wn.2d 159, 163, 641 P.2d 708 (1982).

With these considerations in mind, it is clear to us that the trial court had tenable grounds for acting as it did. The trial court had considered the positions of the parties, including a request by the prosecutor that the jury be sent home for the day, before deciding to inquire of the presiding juror about the reported deadlock. The presiding juror, in the open courtroom in the presence of the entire panel, advised the court that

6

there was no probability of the panel reaching a verdict. The defense then requested the mistrial; the prosecutor did not object.[3]

Under these facts, there was no abuse of discretion in granting the defense request. The jury did not believe it would be able to resolve the case and it likely would have been error to direct that they continue their deliberations at that point. The court, therefore, did not err in granting the mistrial. While that is dispositive, the result would not vary if we treated this solely as a double jeopardy claim.

It is fundamental that a defendant cannot be placed in jeopardy twice for the same offense. U.S. CONST. amend. V; WASH. CONST. art. I, § 9. One "valued right" protected by double jeopardy principles is the right of a defendant to have the charges against him or her resolved by a particular tribunal. *Wade v. Hunter*, 336 U.S. 684, 689, 69 S. Ct. 834, 93 L. Ed. 974 (1949). Where a jury is discharged without rendering a verdict and without the consent of the defendant, retrial is constitutionally impermissible unless the trial ended due to a "manifest necessity." *State v. Wright*, 165 Wn.2d 783, 793, 203 P.3d 1027 (2009).

---

[3] In light of our conclusion on the merits, we decline to address the prosecutor's argument that the defense invited this alleged error. *State v. Studd*, 137 Wn.2d 533, 973 P.2d 1049 (1999).

Here, even if we address the problem as one of double jeopardy instead of as a mistrial, the result would be the same. The defendant consented to the mistrial. The absence of his consent is fundamental to arguing that the trial court erroneously discharged the jury. Having waived the "valued right" to have the particular panel decide the case by requesting that the panel be discharged, there is no double jeopardy concern.

For both reasons, the trial court did not err by discharging the first jury.

*Child Hearsay Ruling*

Mr. Gmeiner challenges the child hearsay ruling from several different angles, but his fundamental problem is that he has waived his statutory claims by failing to raise them in the trial court. If he wanted a different procedure followed in the trial court, he needed to ask the trial court to do things differently.

This case does not present a confrontation clause violation. The child's statement to her mother and her grandmother was not "testimonial hearsay" admitted in violation of the defendant's Sixth Amendment right to confront his accuser. *See Crawford v. Washington*, 541 U.S. 36, 51-53, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004); *State v. Shafer*, 156 Wn.2d 381, 389, 128 P.3d 87 (2006) (child's disclosure of sexual abuse to her mother was not testimonial hearsay). The procedures set forth in the child hearsay statute, RCW 9A.44.120, do not implicate modern constitutional principles, under the facts of this disclosure. If the statement had been made to a law enforcement operative, a

8

different question might be presented. *See, e.g.*, *Shafer*, 156 Wn.2d at 388-389.

However, that is not this fact pattern. There is no constitutional violation.

Instead, Mr. Gmeiner claims that the court erred in conducting the child hearsay

hearing in the absence of A.G. and in accepting the stipulation of the attorneys that she

was not available to testify.[4] These alleged statutory violations are procedural claims

involving the child hearsay statute rather than constitutional contentions. A proper

objection must be made at trial to perceived errors in admitting or excluding evidence;

the failure to do so precludes raising the issue on appeal. *State v. Guloy*, 104 Wn.2d 412,

421, 705 P.2d 1182 (1985). "'[A] litigant cannot remain silent as to claimed error during

trial and later, for the first time, urge objections thereto on appeal.'" *Id*. (quoting

*Bellevue Sch. Dist. 405 v. Lee*, 70 Wn.2d 947, 950, 425 P.2d 902 (1967)).

The general rule in this state is that an appellate court will not consider an issue on

appeal that was not first presented to the trial court. RAP 2.5(a); *State v. Scott*, 110

Wn.2d 682, 685, 757 P.2d 492 (1988). An exception to this general rule exists if the

issue involves a manifest error affecting a constitutional right. RAP 2.5(a). As

---

[4] Mr. Gmeiner's reliance on *State v. Hopkins*, 137 Wn. App. 441, 154 P.3d 250 (2007), fails on multiple grounds. For one, there was no discussion in *Hopkins* concerning preservation of this issue. Second, at least some of the disclosures at issue in *Hopkins* were made to law enforcement operatives, taking that fact pattern outside of this one and putting it squarely on Sixth Amendment grounds. This case, instead, is governed by *Shafer*, where (like here) the disclosures were to family members and the parties also stipulated that the child was not competent to testify. 156 Wn.2d at 385-391.

previously noted, the testimony at issue did not present a question of constitutional law,

nor has appellant presented any argument suggesting that the conduct of a statutory

hearing presents a question of constitutional law. Thus, the claims raised here do not

present issues that can be presented for the first time on appeal. RAP 2.5(a)(3).

Mr. Gmeiner has waived this argument. RAP 2.5(a).

*Ineffective Assistance of Counsel*

Mr. Gmeiner next argues that his trial attorneys erred in stipulating to A.G.'s

unavailability and absence from the hearing, as well as in failing to object to alleged

prosecutorial misconduct. These claims are easily parried.

The law governing ineffective assistance allegations is well settled. An attorney

must perform to the standards of the profession; failure to live up to those standards will

require a new trial when the client has been prejudiced by counsel's failure. *State v.

McFarland*, 127 Wn.2d 322, 334-335, 899 P.2d 1251 (1995). In evaluating

ineffectiveness claims, courts must be highly deferential to counsel's decisions and there

is a strong presumption that counsel was effective. A strategic or tactical decision is not

a basis for finding error. *Strickland v. Washington*, 466 U.S. 668, 689-691, 104 S. Ct.

2052, 80 L. Ed. 2d 674 (1984). Courts must evaluate counsel's performance using a two-

prong test that requires determination whether or not (1) counsel's performance failed to

meet a standard of reasonableness and (2) actual prejudice resulted from counsel's failures.

*Id*. at 690-692. When a claim can be disposed of on one ground, a reviewing court need

not consider both *Strickland* prongs. *Id*. at 697; *State v. Foster*, 140 Wn. App. 266, 273, 166 P.3d 726 (2007).

As to the absence of A.G. from the child hearsay hearing, Mr. Gmeiner cannot establish that his attorney erred. Unlike the trial court and the judges of this court, the attorneys met with A.G. and could assess her ability to communicate. Neither side thought she would be able to testify. There simply is no evidence in this record to suggest that A.G. could have testified. Thus, defense counsel cannot be faulted for stipulating that she would not be present.[5]

The remaining contention fails for inability to establish prejudice from counsel's failure to object to alleged prosecutorial misconduct. As we discuss in the next section, any errors made by the prosecutor did not prejudice the defense. Accordingly, counsel's failure to object did not constitute prejudicial error.

The ineffective assistance argument is without merit.

*Prosecutorial Misconduct*

Mr. Gmeiner's final argument is that the prosecutor committed misconduct in his questioning of the detective, the cross-examination of Mr. Gmeiner, and in closing argument. There was no prejudicial error.

---

[5] It also may well have been a tactical decision not to call the child. If A.G. had testified consistent with the disclosure, that fact would only hurt the defense.

Familiar standards also govern review of this claim. The appellant bears the burden of demonstrating prosecutorial misconduct on appeal and must establish that the conduct was both improper and prejudicial. *State v. Stenson*, 132 Wn.2d 668, 718, 940 P.2d 1239 (1997). Prejudice occurs where there is a substantial likelihood that the misconduct affected the jury's verdict. *Id.* at 718-719. The allegedly improper statements should be viewed within the context of the prosecutor's entire argument, the issues in the case, the evidence discussed in the argument, and the jury instructions. *State v. Brown*, 132 Wn.2d 529, 561, 940 P.2d 546 (1997).

Reversal is not required where the alleged error could have been obviated by a curative instruction. *State v. Gentry*, 125 Wn.2d 570, 596, 888 P.2d 1105 (1995). The failure to object constitutes a waiver unless the remark was so flagrant and ill-intentioned that it evinced an enduring and resulting prejudice that could not have been neutralized by an admonition to the jury. *Id.*; *State v. Swan*, 114 Wn.2d 613, 665, 790 P.2d 610 (1990); *State v. Belgarde*, 110 Wn.2d 504, 507, 755 P.2d 174 (1988). Finally, a prosecutor has "wide latitude" in arguing inferences from the evidence presented. *Stenson*, 132 Wn.2d at 727.

The first challenge is to questioning the detective whether he was able to find a motive for S.G. to fabricate the story against her brother. This did not constitute error. The detective was not commenting on the credibility of S.G., but was instead addressing the thoroughness of the investigation. In this situation, where the only two witnesses had

completely differing views of the incident, it would have been a serious error for the detective to accept one version uncritically without checking for possible motives. The fact that he did not discover any motives is not the same thing as saying that the witness was credible. The question was not objectionable; the prosecutor did not err in asking it.

Appellant next contends that the prosecutor erred in cross-examining Mr. Gmeiner. One result of a successful defense objection[6] was that the prosecutor rephrased his question to ask if Mr. Gmeiner thought his sister was lying. This was improper; no witness is permitted to opine on the credibility of another. Mr. Gmeiner answered and explained that S.G. believed her story, but was mistaken in doing so. He did not impugn his sister's credibility, but instead was able to set forth the defense theory of the incident. There was no prejudice from the prosecutor's errant rephrasing of the question.

Finally, appellant contends that the prosecutor erred in closing argument when he stated that the defense had to walk a fine line between saying S.G. was mistaken and that S.G. was lying, that counsel had "very honorably" declined to accuse S.G. of lying, but that the implication of some of the defense arguments was that S.G. was lying. RP at 1028. It is hard to identify what Mr. Gmeiner believes was error here since he does not explain his argument other than to say it "undermined" defense counsel's integrity. On

_____

[6] The prosecutor had asked Mr. Gmeiner if he thought that his sister believed in the story she was telling. The fact that Mr. Gmeiner thought his sister believed her story was relevant—and therefore proper—although it came close to commenting on the witness's credibility and could have been excluded under ER 403.

its face, these statements do not undermine defense counsel at all, and likely are well within the broad latitude afforded attorneys in closing argument. *Stenson*, 132 Wn.2d at 727. If there was error here, it could easily have been cured by a timely objection. That was not done. Thus, this specific argument fails both due to insufficient showing of any error and insufficient showing of incurable prejudice.

Mr. Gmeiner has failed to show that the prosecutor's arguments constituted prejudicial error. Accordingly, his misconduct argument fails.

The conviction is affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Korsmo, J.

I CONCUR:

_____
Pennell, A.C.J.

No. 35370-2-III

FEARING, J. (concurring) — The lead author writes at pages 12-13 of his opinion:

> The first challenge is to questioning the detective whether he was able to find a motive for S.G. to fabricate the story against her brother. This did not constitute error. The detective was not commenting on the credibility of S.G., but was instead addressing the thoroughness of the investigation. In this situation, where the only two witnesses had completely differing views of the incident, it would have been a serious error for the detective to accept one version uncritically without checking for possible motives. The fact that he did not discover any motives is not the same thing as saying that the witness was credible. The question was not objectionable; the prosecutor did not err in asking it.

We disagree with this paragraph.

The lead author writes that the detective testified about finding no motive for S.G. to fabricate her story in order to address the thoroughness of the investigation, not to address S.G.'s credibility. Assuming such to be true, the lead author presents no reason why the detective needed to testify about the quality of the investigation. The criminal trial encompassed the guilt or innocence of Jerremy Gmeiner, not the thoroughness of the police investigation. Generally, the quality of the investigation lacks relevance to guilt or innocence. *State v. Edwards*, 131 Wn. App. 611, 128 P.3d 621 (2006); *State v. Johnson*,

61 Wn. App. 539, 811 P.2d 687 (1991); *State v. Aaron*, 57 Wn. App. 277, 787 P.2d 949 (1990); *State v. Lowrie*, 14 Wn. App. 408, 542 P.2d 128 (1975).

We also disagree with the lead author's assertion that the detective's failure to discover any motives to fabricate does not bear on the witness' credibility. Motives to fabricate go indirectly, if not directly, to the question of whether someone prevaricates. Asking the detective to aver whether or not he found a motive to fabricate served no purpose other than to bolster the credibility of S.G.

We would affirm the conviction on the basis that the prosecutor's questioning of the detective with regard to finding a motive to lie was not so flagrant and ill-intentioned that it evinced an enduring and resulting prejudice that could not have been neutralized by an admonition to the jury.

_____
Fearing, J.

I CONCUR:

_____
Pennell, A.C.J.

2