IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 79137-1-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| DHILLON, RANDEEP SINGH, | ) | |
| DOB: 12/01/1971, | ) | |
| | ) | |
| Appellant. | ) | |

BOWMAN, J. — Randeep Singh Dhillon appeals his jury conviction for aggravated domestic violence felony violation of a no-contact order. He argues that the trial court erred in denying his motion for a mistrial based on improper statements his wife made while testifying at trial. Dhillon also filed a statement of additional grounds for review. We hold that the trial court did not abuse its discretion in denying Dhillon's motion for a mistrial and that none of the arguments made in the statement of additional grounds warrant reversal. We affirm the conviction.

FACTS

On December 6, 2017, Everett Municipal Court issued a no-contact order prohibiting Dhillon from contacting his teenage daughter G.D. The order

Citations and pin cites are based on the Westlaw online version of the cited material.

prohibited Dhillon from knowingly coming within 500 feet of G.D. and her residence, school, and workplace.  Dhillon signed the no-contact order.  Dhillon immediately moved out of the family home he shared with G.D., his younger daughter R.D., and his wife Kamalpreet[1] and moved in with his sister.

On December 20, 2017, Dhillon became intoxicated and telephoned his wife, threatening to kill himself.  Dhillon suffered from depression, anxiety, and alcoholism and had made similar threats in the past.  On December 20, Dhillon requested that his wife pick him up from his sister's house and bring him home.  Kamalpreet testified that she agreed to bring Dhillon home because G.D. was away at work and she feared for her husband's safety.

At some point after Dhillon returned to the family home, his daughter G.D. returned home from work.  Dhillon argued with and yelled at his wife and daughters and warned them that he would kill himself if they contacted the police.  Dhillon grabbed a kitchen knife and Kamalpreet called 911.  Fearing Dhillon would overhear her, Kamalpreet disconnected the call.  The 911 operator called back and Kamalpreet told the operator she had misdialed.  Meanwhile, Dhillon locked himself in a bedroom.

Everett Police Department officers were dispatched to check on the family.  The officers arrived at the home and Kamalpreet explained why she called 911 and told them about the no-contact order.  The police discovered Dhillon in the home with a self-inflicted stab wound.  Medics took Dhillon to the hospital for treatment and the police later arrested him.

---

[1] We refer to Kamalpreet by her first name for purposes of clarity and mean no disrespect by doing so.

The State charged Dhillon with domestic violence felony violation of a no-contact order and alleged the aggravating factor that the offense occurred in the presence of minor children. Dhillon moved to bifurcate the trial. The court denied the motion. Dhillon stipulated he "has been convicted at least twice for violating a court order prior to December 20, 2017" and the parties agreed to read the stipulation to the jury. Dhillon also moved to exclude evidence of prior domestic violence in the home; police familiarity with the residence; and "other convictions, infractions, or bad acts." The court granted the motion.

At trial, Kamalpreet testified about multiple incidents in the past where she called 911 because of Dhillon's drinking and behavior. Dhillon moved for a mistrial. The court denied his motion but offered a curative instruction. Dhillon declined the instruction.

A jury convicted Dhillon as charged of felony violation of a no-contact order. By special verdict, the jury found the crime was an aggravated domestic violence offense. The trial court imposed a 41-month standard-range sentence. Dhillon appeals.

ANALYSIS

Dhillon argues that the court erred in denying his motion for a mistrial. We disagree.

We review a trial court's denial of a motion for mistrial for abuse of discretion. State v. Escalona, 49 Wn. App. 251, 254-55, 742 P.2d 190 (1987). A trial judge has broad discretion to grant or deny a motion for mistrial prior to the jury reaching a verdict. State v. Melton, 97 Wn. App. 327, 331-32, 983 P.2d 699

(1999). A trial court should grant a mistrial only if the defendant has been so prejudiced as to require a new trial. State v. Johnson, 124 Wn.2d 57, 76, 873 P.2d 514 (1994). To determine whether an irregularity may have influenced a jury, the court considers (1) the seriousness of the irregularity, (2) whether the statement was cumulative of other evidence properly admitted at trial, and (3) whether an instruction to disregard the statement could have cured the irregularity. Escalona, 49 Wn. App. at 254 (citing State v. Weber, 99 Wn.2d 158, 165-66, 659 P.2d 1102 (1983)).

The prosecutor questioned Kamalpreet about events leading up to her 911 call on December 20, 2017 and her conversation with the 911 operator and police:

> Q.    What happened once [Dhillon] was home?
> A.    He . . . was still drunk, and yelling. Once he gets drunk, he is always yelling. . . .
> . . . .
> Q.    And how did [the 911 call] come about?
> A.    . . . [He] was really upset, and he — he has been suicidal in the past also. He said he was going to kill himself if 911 got involved this time, because that is something that really makes him mad, calling 911. . . .
> . . . .
> Q.    Do you remember telling [911] that it was a misdial . . . ?
> A.    . . . I don't remember exactly. It has happened so many times that we had to call the police when he was drunk, and doing all that, so it could be in this particular situation what I did. That's the reason why I don't remember exactly what I said at this time.
> . . . .
> Q.    Do you remember the officer asking you what prompted [Dhillon] to want to harm himself?
> A.    That's one of the questions they ask always, so I would say yes.
> . . . .

4

> A.     . . . [T]here have been so many times that he gets drunk and then he yells . . . [s]o that's why like I don't remember exactly what happened, why — who he was yelling at.

Dhillon did not object to any of the testimony.

The trial court determined that Kamalpreet's testimony violated its pretrial rulings. But not every trial irregularity triggers a mistrial. State v. Garcia, 177 Wn. App. 769, 784, 313 P.3d 422 (2013). Dhillon argues that Kamalpreet's testimony is a serious irregularity because it amounts to propensity evidence in violation of ER 404(b). He cites Escalona in support of his argument. In Escalona, the State charged the defendant with second degree assault for threatening the victim with a knife. Escalona, 49 Wn. App. at 252. The victim testified that Escalona "already has a record" and "had stabbed someone" before. Escalona, 49 Wn. App. at 253. We held this was propensity evidence because a jury could conclude that Escalona "acted on this occasion in conformity with the assaultive character he demonstrated in the past." Escalona, 49 Wn. App. at 256.

Here, the State charged Dhillon with domestic violence felony violation of a no-contact order. At issue was whether he knowingly came within 500 feet of G.D. or her residence. Kamalpreet's testimony that she called 911 on prior instances due to Dhillon's drinking and yelling is unrelated to whether he knowingly violated the no-contact order with G.D. It does not amount to propensity evidence.

Kamalpreet's testimony was also cumulative of other testimony elicited at trial. Dhillon argued that the testimony "opened the door" to questions on cross-

examination about Dhillon's mental illness, prior suicide attempts, and efforts to "self-medicate[ ]" with alcohol. The trial court permitted the testimony over the State's objection. Kamalpreet proceeded to testify about family turmoil from Dhillon's mental illness, attempts at self harm, ongoing drinking, fights with his daughter, and calls to 911. Dhillon testified he did not want Kamalpreet to call 911 because during a prior hospitalization, he "didn't get enough help" and "end[ed] up paying a lot of . . . medical bills." Dhillon used this information to bolster his theory that he was mentally ill and did not knowingly violate the no-contact order.

Finally, the trial court did not instruct the jury to disregard Kamalpreet's comments because it did not have the opportunity to do so. Dhillon did not object to the testimony and rejected a curative instruction when offered by the court.

Considering the totality of the circumstances, Kamalpreet's statements were not so prejudicial to require a new trial and the court did not abuse its discretion in denying Dhillon's motion for a mistrial.

Statement of Additional Grounds

Dhillon raises several issues in a statement of additional grounds. First, Dhillon argues that the "State erred and or committed mis-conduct when it mislead [sic] the court and Jury into believing and Portraying that Appellant committed a similar crime in year 2012 when the case was dismissed with Prejudice." It appears that Dhillon is referring to information about a prior incident described in the State's "Affidavit of Probable Cause." The record does

not support Dhillon's contention that the State used the incident to mislead the court and the jury. Indeed, Dhillon does not cite to any instance throughout the course of the trial where the State or defense counsel referenced the 2012 charges.

Dhillon also argues that his "minor daughter was brought to Trial to testify, without proper authorization because of her doing mental health [and] behavioral health treatment at the time of Trial." Dhillon cites no legal authority for the proposition that the State required his authorization to call G.D. as a witness and fails to identify any evidence that G.D. was not competent to testify.[2]

Next, Dhillon argues:

Appellant was subjected to the in-effective assistance of Counsel when Counsel failed to object [to] the State, using the year 2012 case, that was dismissed with Prejudice; failed to call[ ] Defense witness to trial; failed to submit, and use exculpatory evidence, concerning my/Appellant's health condition before and during the time of Incident on Dec. 20, 2017.

Courts apply a strong presumption that defense counsel's trial choices fall within a wide range of reasonable professional assistance. State v. Grier, 171 Wn.2d 17, 38, 246 P.3d 1260 (2011). This includes decisions in selecting witnesses and excluding evidence. In re Pers. Restraint Petition of Davis, 152 Wn.2d 647, 742, 101 P.3d 1 (2004); In re Pers. Restraint of Lui, 188 Wn.2d 525, 552, 397 P.3d 90 (2017). An appellant has the burden to prove his counsel provided both deficient performance and resulting prejudice that caused a different trial outcome. State v. Thomas, 109 Wn.2d 222, 225-26, 743 P.2d 816

___

[2] Washington permits minors to testify so long as they are competent. State v. S.J.W., 170 Wn.2d 92, 99-100, 239 P.3d 568 (2010); RCW 5.60.020, .050. Courts presume witnesses are competent. S.J.W., 170 Wn.2d at 100.

(1987) (citing <u>Strickland v. Washington</u>, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)).

As already discussed, Dhillon fails to establish that the 2012 incident was referenced at trial. Dhillon further clams that his attorney was ineffective because she did not call his sister as a witness and did not obtain an unrelated CPS[3] report. Dhillon fails to show how his sister had any relevant testimony to offer at trial. Dhillon addressed the status of the CPS report with the trial court. The court explained to Dhillon that the CPS investigation would have focused on the well-being of the children, not on whether Dhillon violated the no-contact order. There is no evidence Dhillon received ineffective assistance of counsel.

Finally, Dhillon argues that the trial court abused its discretion in denying his motion for a mistrial on the grounds that "3 potential jurors" saw him in handcuffs. The court determined that only 1 juror was in the hallway during an afternoon break when Dhillon was in handcuffs and escorted by uniformed officers. The court asked the juror what she saw and the juror said, "Just some people walking towards the elevator." The juror stated she did not discuss what she saw with any other juror. The court excused that juror from the panel at defense counsel's request. The trial court did not abuse its discretion in denying Dhillon's motion for mistrial.

---

[3] Child Protective Services.

8

We affirm the jury conviction for aggravated domestic violence felony violation of a no-contact order.

_____
Bronson, J

WE CONCUR:

_____
Andrus, A.C.J.

_____
Dwyer, J.