[No. 35623-6-II.   Division Two.   August 27, 2008.]

THE STATE OF WASHINGTON, *Respondent*, v. TERRANCE EUGENE ROBINSON, *Appellant.*

*Jodi R. Backlund* (of *Backlund & Mistry*), for appellant.

*Jeremy R. Randolph, Prosecuting Attorney*, and *Lori E. Smith, Deputy*, for respondent.

¶1 HUNT, J. — Terrance Robinson appeals his jury convictions for first degree theft and trafficking in stolen property. He argues that his retrial, following a State-initiated mistrial over his objection, violated the constitutional prohibition against double jeopardy.[1] We agree, reverse, and remand to the trial court to dismiss the charges with prejudice.

## FACTS

¶2 The State charged Robinson and Robert Church with second degree burglary (count one), first degree theft (count two), and first degree trafficking in stolen property (count three), arising from the theft and sale of black walnut timber planks stored in Daniel Steel's outbuilding. Trial began on September 5, 2006.

¶3 Steel testified that he posted a flier in an attempt to locate his missing planks, but neither party introduced the flier as an exhibit. Three days into trial, the bailiff approached the prosecutor and told him that the jury wanted

---

[1] Robinson also argues that (1) the trial court erred in admitting the victim's prior testimony because the State failed to prove that he was unavailable and (2) the accomplice liability jury instruction misstated the law. We do not address these issues as there will be no retrial. The constitutional double jeopardy prohibition mandates reversal of Robinson's convictions and dismissal of the charges with prejudice.

to see the flier.[2] The prosecutor told the bailiff to repeat his statement to defense counsel, which he did.

---

[2] The entire mistrial proceedings occurred as follows:

Mr. Randolph: Jeremy Randolph for the state. With the court's leave, we have a matter that's come up that needs the court's attention prior to the jury being called back.

The Court: In this case?

Mr. Randolph: In this case, yes.

[Deputy Prosecutor Baum]: Shall I address the court?

The Court: You may.

Mr. Baum: The bailiff came to me and indicated to me that the jury wanted to see the flier and wanted to know what it looked like, some other information about the flier[ ].

The Court: What bailiff?

Mr. Erickson: Me, your honor.

Mr. Baum: I immediately called Mr. Blair over and had the bailiff tell Mr. Blair the same thing he told me and now we're putting it on the record.

Mr. Randolph: I think the court can appreciate the Prosecutor's Office feels we have a duty to preserve the sanctity of the jury process. Obviously, the jury is not following the court's instruction that they not discuss the case. There [are] some serious difficulties, and, quite frankly, I don't mean to disparage the bailiff, but some difficulty with that kind of communication going through the bailiff.

The Court: Mr. Blair.

Defense Attorney [Mr. Blair]: I wasn't involved in whatever Mr. Randolph feels he needs to address the court on. I heard the bailiff communicate something to me from the jury. I'm going to let the state deal with it. I may have a comment, but I haven't heard any requests.

The Court: Does the state have a motion?

Mr. Randolph: We do, your Honor, we're moving for a mistrial. It may well be that this would last [sic] quite well to a jury verdict, however, based on what the court of appeals has ruled as it relates to the jury process, I can almost guarantee it would be reversed. I had this happen to me clear back in '76 in State vs. Christiansen. I know this [is a] difficult, wasteful situation, but if they're discussing what they think ought to be -- you know, discussing the evidence, we have a real problem.

The Court: Mr. Blair.

Mr. Blair: I have discussed it with Mr. Robinson, we're object[ing] to a mistrial. I understand the court's and the state's concerns, and based on -- I'll be candid with the court -- based on what I heard [from] the bailiff, I'm going to include some things in my questioning and my argument to the jury that I wouldn't have. I'm just being candid with the court.

The Court: Well -- response.

Mr. Randolph: The long and short of it, I'm not in any way meaning to cast any [aspersion] on Mr. Blair, he's being candid, he heard the same thing that Mr. Baum did. The long and the short of it is in his own statement to your Honor when Mr. Blair said I'm going to be using communications from the jury in my trial process, there is a wall that has to be maintained and obviously this wall has been breached.

## I. Mistrial

¶4 The State then moved for a mistrial; Robinson objected. The trial court heard oral argument on the issue for less than nine minutes. The trial court did not conduct a hearing or interview the bailiff or any juror. Robinson continued to object to a mistrial. The trial court ruled that the bailiff had committed misconduct and granted the State's motion for a mistrial. Without providing a factual basis for its ruling, the trial court reasoned that (1) the jury did not follow the trial court's instruction to refrain from discussing the evidence before deliberations and (2) the bailiff's comment would affect the attorneys' trial strategies, perhaps causing them to admit Steel's flier into evidence or to elicit more testimony about it.

¶5 The trial court acknowledged on the record that granting a mistrial would raise double jeopardy issues. But it declined to consider the issue and did not determine whether there was a "manifest necessity" for a mistrial, in spite of Robinson's objection.

¶6 Robinson moved to dismiss because after the court's declaration of a mistrial, a retrial would violate the constitutional double jeopardy prohibition. Robinson argued primarily that the trial court's failure to question the jurors or bailiff rendered the State-initiated mistrial procedurally defective. He argued, "[T]he question is, what did [the trial judge] base his granting of [the State's] request for a mistrial on? And the answer is we don't know." Report of

---

The Court: Well, I'm going to grant the motion for mistrial and declare a mistrial of the case. *I understand that that raises jeopardy issues, but that can be dealt with at a later time.* The reason being that, number one, the jury has been admonished four or five times, every recess when they're excused for the evening and so forth, that they not discuss the case with anyone or discuss the case amongst themselves. There's also been a communication from a bailiff about the jury's desires to counsel which clearly affects the strategy of the case, if you will, and also what the jury is looking at. The tip of the hat is [sic] the jury's concern is the consideration and circumstances. Mr. Blair indicated advantageous to him to maybe argue something later. I'm not going to allow that to happen. Under those circumstances, I feel that a mistrial is warranted.

Report of Proceedings (Sept. 8, 2006) at 68-71 (emphasis added).

Proceedings (RP) (Nov. 14, 2006) at 2. Counsel asserted that (1) on the record, there was no sound basis for concluding that the bailiff or jury had committed misconduct and, therefore, no reason to declare a mistrial; (2) based on the existing record, the bailiff may have overheard a single juror wonder out loud whether the parties would offer the flier into evidence, a factual scenario that would not constitute misconduct; (3) in the absence of an evidentiary inquiry, the record did not support a mistrial based on manifest necessity; and (4) the retrial would prejudice Robinson because the State could reformulate its case after the mistrial and obtain the testimony of a witness who did not appear at the first trial.

¶7 The trial court denied Robinson's motion to dismiss, ruling that the mistrial was based on "manifest necessity" caused by juror and bailiff misconduct. Nevertheless, the trial court candidly commented, "Do I agree that perhaps further inquiry would have been beneficial? Yes, I do. I think that's a valid issue." RP (Nov. 14, 2006) at 18.

## II. RETRIAL

¶8 The State tried Robinson a second time. The jury convicted him of first degree theft (count two) and first degree trafficking in stolen property (count three). It found him not guilty of the burglary charge (count one).

¶9 Robinson appeals.

## ANALYSIS

¶10 Robinson argues that the constitutional prohibition against double jeopardy barred his retrial after the trial court declared a mistrial on the State's motion over his objection. We agree.

### I. DOUBLE JEOPARDY PROHIBITION

¶11 A basic tenet of our constitutional freedoms is the prohibition against a second trial for the same offense:

No person shall be "twice put in jeopardy of life or limb" for the same offense. U.S. CONST. amend. V. Mirroring the federal constitution, article I, section 9 of the Washington Constitution provides: "No person shall . . . be twice put in jeopardy for the same offense."

¶12 Generally, the double jeopardy prohibition guards against government oppression. *State v. Maestas*, 124 Wn. App. 352, 358, 101 P.3d 426 (2004) (quoting *United States v. Welch*, 928 F.2d 915, 917 (10th Cir. 1991)). Specifically, the prohibition protects defendants from running "the same 'gauntlet' more than once." *State v. Corrado*, 81 Wn. App. 640, 646 & n.11, 915 P.2d 1121 (1996) (quoting *Green v. United States*, 355 U.S. 184, 190, 78 S. Ct. 221, 2 L. Ed. 2d 199 (1957)). It also prohibits the State from having more than one opportunity to convict a defendant for the same crime. *Corrado*, 81 Wn. App. at 646 n.12 (citing *Arizona v. Washington*, 434 U.S. 497, 505, 98 S. Ct. 824, 832, 54 L. Ed. 2d 717 (1978)). And, most relevant here, the double jeopardy prohibition protects the defendant's " 'valued right to have his trial completed by a particular tribunal.' " *State v. Melton*, 97 Wn. App. 327, 332, 983 P.2d 699 (1999) (internal quotation marks omitted) (quoting *Arizona v. Washington*, 434 U.S. at 519).

¶13 Once a jury has been empanelled and sworn, jeopardy attaches. *State v. Eldridge*, 17 Wn. App. 270, 276, 562 P.2d 276 (1977) (citing *Downum v. United States*, 372 U.S. 734, 83 S. Ct. 1033, 10 L. Ed. 2d 100 (1963)), *review denied*, 89 Wn.2d 1017 (1978). Once jeopardy has attached, the court must determine whether a retrial is barred. *Eldridge*, 17 Wn. App. at 276.

## II. MANIFEST NECESSITY

¶14 Standards governing whether retrial is barred differ dramatically depending on whether the defendant requested the mistrial or whether the State sought a mistrial over the defendant's objection. When the defendant

requests a mistrial, double jeopardy does not bar retrial.[3] *State v. Wright*, 131 Wn. App. 474, 484, 127 P.3d 742 (2006) (citing *United States v. Scott*, 437 U.S. 82, 99, 98 S. Ct. 2187, 57 L. Ed. 2d 65 (1978)). *But see State v. Martinez*, 121 Wn. App. 21, 35, 86 P.3d 1210 (2004) (holding that retrial may be barred as a violation of the right to fair trial if the defendant requested a mistrial due to outrageous government conduct).

¶15 In contrast, a mistrial without the defendant's consent must be based on "manifest necessity" in order to circumvent the double jeopardy prohibition. *Melton*, 97 Wn. App. at 331. When the State seeks a mistrial over the defendant's objection, " 'extraordinary and striking circumstances' must exist before the judge's discretion can come into play." *State v. Jones*, 97 Wn.2d 159, 164, 641 P.2d 708 (1982). The trial court must "engage in a 'scrupulous exercise of judicial discretion' before foreclosing a defendant's 'valued right to have his trial completed by a particular tribunal.' " *Melton*, 97 Wn. App. at 332 (footnote and internal quotation marks omitted) (quoting *State v. Browning*, 38 Wn. App. 772, 775, 689 P.2d 1108 (1984); *Arizona v. Washington*, 434 U.S. at 519). "In evaluating the manner in which the trial court exercised its discretion, the fundamental question is whether it acted in a precipitate or unreasoning fashion." *Melton*, 97 Wn. App. at 333 (citing *Arizona v. Washington*, 434 U.S. at 514-15).

## A. Standard of Review

¶16 Courts consider three factors to determine whether a State-initiated mistrial was properly based on manifest necessity:

(1) whether the court "act[ed] precipitately [or] gave both defense counsel and the prosecutor full opportunity to explain

---

[3] A retrial does not place a defendant in double jeopardy after the defendant requests and is granted a mistrial because, in so doing, the defendant voluntarily chooses to terminate the first trial before the jury's verdict. *State v. Wright*, 131 Wn. App. 474, 484, 127 P.3d 742 (2006) (citing *United States v. Scott*, 437 U.S. 82, 99, 98 S. Ct. 2187, 57 L. Ed. 2d 65 (1978)).

their positions"; (2) whether it "accorded careful consideration to [the defendant's] interest in having the trial concluded in a single proceeding"; and (3) whether it considered alternatives to declaring a mistrial.

*Melton*, 97 Wn. App. at 332 (alterations in original) (footnotes omitted) (quoting *Arizona v. Washington*, 434 U.S. at 515-16). Examining these factors as they apply here, we hold that Robinson's mistrial was not based on manifest necessity. We address each factor in turn.

### B. "Precipitate" Action

¶17 First, the trial court failed to engage in a " 'scrupulous exercise of judicial discretion.' " *Melton*, 97 Wn. App. at 332 (internal quotation marks omitted) (quoting *Browning*, 38 Wn. App. at 775). On the contrary, the trial court acted "precipitately" by failing to question the bailiff and affected jurors in a fact-finding hearing.[4] Instead, it allowed less than nine minutes of unprepared oral argument by the parties' attorneys before rendering its decision.[5]

### 1. Bailiff misconduct

¶18 The trial court ruled that the bailiff committed misconduct, but it did not establish any factual basis for its ruling. Although there are theories that might arguably support this ruling, the record is insufficiently developed to

---

[4] According to trial counsel, the bailiff had said something about the jury's wanting to see Steel's flier. But the trial court did not interview the bailiff, even though he was present in the courtroom and readily available to answer any questions.

[5] Although the trial court allowed oral argument, it did not give counsel time to research the matter or to prepare their arguments. As a result, the attorneys failed to present law that could have assisted the trial court in deciding whether to grant the State's motion for a mistrial. We reiterate that the trial court noted potential double jeopardy concerns, but it chose to leave that issue for appeal.

support them.[6] In short, the trial court did not ask the questions necessary to determine whether the bailiff committed misconduct. Thus, the record before us on appeal is insufficient to determine whether a mistrial was warranted based on bailiff misconduct. We hold that the trial court acted "precipitately" when it declared a mistrial without developing the necessary facts to determine the issue of bailiff misconduct.

## 2. Juror misconduct

¶19 The trial court also failed to interview any jurors who might have engaged in or have been affected by juror misconduct.[7] We cannot tell from the attorney's description of events, including relating what the bailiff had said, whether one juror or several jurors mentioned the flier. Moreover, as the trial court apparently recognized, our record supports the possibility that an isolated juror committed misconduct that did not taint the other jurors. If this were true, the trial court might have dismissed the one tainted juror and the first trial could have proceeded, perhaps with an alternate juror, if there was one, or if

---

[6] Neither does the record show other types of misconduct: First, the record does not show whether the bailiff actually communicated with the jury. RCW 4.44.300. Nor does the record show that the trial court ever asked whether the bailiff communicated with any juror.

Second, the record does not show that the bailiff communicated with any person about the state of the juror's deliberations or the verdict before they rendered their verdict. RCW 4.44.300. Nor does the record show that the trial court questioned anyone about such a communication. On the contrary, the record shows that the juror communication concerned a piece of relatively insignificant evidence (a flier that Steel had posted in an attempt to locate his missing planks) and did not reflect the juror's opinion about the case's merits.

Third, the CR 51(i) procedure requiring the bailiff to relay to the judge written questions by the jury does not apply before jury deliberations begin, as was the case here.

[7] See *State v. Crowell*, 92 Wn.2d 143, 145-47, 594 P.2d 905 (1979) (approving court's investigation of misconduct by asking jurors whether they had a conversation with the bailiff and about the content of that conversation, as long as trial court does not consider testimony about matters that inhere in the verdict); *United States v. Saya*, 247 F.3d 929, 934 (9th Cir. 2001) (evidentiary hearing on possible juror misconduct is *mandatory* unless court knows the exact scope and nature of the alleged misconduct without a hearing).

Robinson had consented to proceed with fewer than 12 jurors. CrR 6.1(c).

¶20 The trial court was in a unique position to develop the record in order (1) to determine whether juror or bailiff misconduct occurred, and after "accused' (2) if so, to implement a remedy that would preserve Robinson's constitutional right to a fair trial and his " 'valued right to have his trial completed by a particular tribunal.' "[8] *Melton*, 97 Wn. App. at 332 (internal quotation marks omitted) (quoting *Arizona v. Washington*, 434 U.S. at 519). But the trial court failed to develop such a record or to consider an appropriate remedy.

### C. Defendant's Interest in Concluding the Trial in a Single Proceeding

██ ██ ¶21 Neither did the trial court consider Robinson's interest and constitutional rights when it declared the State-requested mistrial over his objection. The court did not specify how a mistrial would protect Robinson's interest; nor did the court discuss and weigh whether the alleged juror-bailiff communication might prejudice Robinson. *See State v. Hopson*, 113 Wn.2d 273, 284, 778 P.2d 1014 (1989) (prejudice to defendant is key question in trial court's decision to grant or deny a mistrial); *State v. Jungers*, 125 Wn. App. 895, 901-02, 106 P.3d 827 (2005) (trial court should grant a mistrial only when the defendant has been so prejudiced that nothing short of a new trial can ensure that the defendant receives a fair trial).

¶22 The trial court also failed to consider Robinson's interest in addressing the mistrial issue in a truncated fashion—holding the hearing immediately after the State requested the mistrial, without allowing defense counsel to research the law or to prepare his argument and without

---

[8] Thus, the record before us contains no facts relevant to juror misconduct other than an attorney's hearsay statement about what the bailiff told him. Such scant evidence would not support an independent holding of manifest necessity on appeal.

first questioning the bailiff and the juror who had supposedly asked to see the flier.

¶23 The record does not show that a mistrial was warranted as a matter of law or that the facts were so clear that delaying the mistrial hearing would have been futile. Moreover, directly after declaring the mistrial, the trial court stated, "I understand that that raises jeopardy issues, but that can be dealt with at a later time." RP (Sept. 8, 2006) at 71. Rather than considering Robinson's constitutional protections against double jeopardy, the trial court expressly declined to consider them before it ordered the State's requested mistrial.

## D. Alternatives to Mistrial

¶24 The record reveals that, during the nine-minute oral argument on the State's motion for a mistrial, the trial court also failed to consider alternatives to a mistrial. Neither bailiff misconduct[9] nor juror misconduct[10] always requires a mistrial.

¶25 For example, the trial court could have admonished the jury and bailiff and given a curative instruction, which courts presume that juries follow. *State v. Willis*, 67 Wn.2d 681, 686, 409 P.2d 669 (1966). The attorneys could have agreed to refrain from further inquiry about or admission of the flier in order to reduce the threat that the communication would prejudice either party. And Robinson could have

---

[9] *See Adkins v. Aluminum Co. of Am.*, 110 Wn.2d 128, 136, 750 P.2d 1257 (1988) (bailiff's communication to jury does not mandate new trial if the information did not prejudicially affect the verdict); *Crowell*, 92 Wn.2d 143 (every technical violation of RCW 4.44.300, prohibiting bailiff's communication with jurors, does not require new trial; rather, the question is whether the violation may prejudice the verdict).

[10] *Jungers*, 125 Wn. App. at 901-02 (trial court should grant a mistrial only if juror misconduct prejudiced the defendant to such an extent that nothing short of a new trial can ensure that he receives a fair trial).

expressly waived his right to appeal on the ground of juror or bailiff misconduct.[11]

¶26 Alternatively, if the trial court had to dismiss one or more jurors for misconduct, it could have seated an alternate juror if available. If not, the trial court could have given Robinson the option to agree to proceed with the remaining original jurors, even though they may have been fewer than 12. *See* CrR 6.1(c) (when juror unable to continue and no alternate juror is available, defendant may elect to continue with smaller jury as an alternative to mistrial).

¶27 Thus, the trial court might have satisfactorily resolved the juror-bailiff communication issue with various remedies short of a mistrial, but it did not consider them. Instead, it quickly granted the State's motion for a mistrial over Robinson's objection, without considering the alternatives. Accordingly, this truncated record does not show a manifest necessity for the court's declaration of a mistrial over Robinson's objection.

### E. Conclusion

¶28 Lacking the requisite showing of manifest necessity, this State-initiated mistrial functioned as an acquittal. Because Robinson was thereby acquitted, the constitutional prohibitions against double jeopardy prohibited his retrial and subsequent convictions.

¶29 As required by the state and federal double jeopardy prohibitions, we reverse Robinson's convictions and remand to the trial court to dismiss the charges against him with prejudice.

PENOYAR, A.C.J., and ARMSTRONG, J., concur.

---

[11] In the absence of such an explicit waiver, defense counsel's objection to the mistrial would likely be deemed invited error that similarly would have precluded appellate review. *State v. Henderson*, 114 Wn.2d 867, 870, 792 P.2d 514 (1990) (holding that when a criminal defendant makes a tactical choice in pursuit of some real or hoped-for advantage, he may not later urge his own action as a ground for reversing his conviction).