# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>Respondent,<br><br>v.<br><br>ADAM C. DIAZ,<br><br>Appellant. | No.  48821-3-II<br><br>UNPUBLISHED OPINION |

BJORGEN, C.J. — In his first trial, Adam Diaz was convicted of a number of charges, but the jury could not reach a verdict on the charge of first degree possession of stolen property and the court declared a mistrial.  He was subsequently tried and convicted of second degree possession of stolen property.  Diaz appeals that conviction, arguing that his second trial subjected him to double jeopardy because the superior court abused its discretion by declaring the first trial a mistrial and discharging the jury.  He also asks that we waive his appellate costs if the State prevails.

We hold that Diaz's second trial did not subject him to double jeopardy, and we affirm his conviction.  Diaz may challenge appellate costs under RAP 14.2 if the State files a cost bill.

## FACTS

The State charged Diaz with one count of first degree possession of stolen property and a

number of other counts. On July 23, 2015, the State and defense counsel appeared in superior

court for voir dire. At its conclusion, 12 jurors and 2 alternates were empaneled.

On July 29, the State began presenting its case. Later that afternoon, the court excused

juror number 8 due to a conflict and seated juror number 13, one of the alternates. On the

following day of trial, August 3, the court excused juror number 12 and seated juror number 14,

the second alternate. At 11:34 a.m., on August 3, the jury began deliberating. Apart from an

hour break for lunch, the jury deliberated continuously until about 4:00 p.m.

On August 4, the jury resumed its deliberations at about 8:50 a.m. The jury deliberated

throughout the day, except between 9:30 a.m. and 10:50 a.m., and between roughly 12:00 p.m.

and 1:05 p.m. At 4:05 p.m., the presiding juror sent a message to the court indicating that the

jury had "reached a verdict on five counts, but are at a stalemate on one." Verbatim Report of

Proceeding (VRP) (Aug. 4, 2015) at 19. The court then asked each juror whether there is "a

reasonable possibility of the jury reaching a verdict on the remaining count in a reasonable

amount of time," and each answered, "No."[1] VRP (Aug. 4, 2015) at 19-20.

After sending the jury to the jury room and questioning counsel, the trial court

determined that trial testimony had taken about a day and a half and that between 18 and 22

exhibits had been admitted. The court then asked whether there was a motion, and the following

exchange ensued:

>      [State]: Not by the State, Your Honor.

---

[1] The transcript indicates that juror 13 had "[n]o response," which was likely the result of the substitution of juror 8 with the first alternate, juror 13. VRP (Aug. 4, 2015) at 20.

[Defense]: One moment your Honor. (Pause.)

Your Honor, I would – initially, I was going to ask the Court to have them – see if they can work it out, come back tomorrow morning. I'm still of that mindset. I'm a little bit concerned that after polling them, none of them believe they can reach a verdict in a reasonable amount of time. I would still move that we come back in the morning, maybe give them another crack at it, and see where we stand. I don't know what the State's position is.

[Court]: Mr. Harlass.

[State]: Your Honor, I realize they've been deliberating for about as long as the testimony took to put on. They got this case about 11:30 yesterday, and I don't know if they did deliberate at all yesterday morning, or whether they started at 1:30. So they've had it about a day-and-a-half.

I'm not opposed to having them come back after this evening, coming back tomorrow morning to try to figure it out, but at the same time, I do understand all 12 of them said "no."

[Court]: Okay. Thanks.

I'm going to take a brief recess and think about it. I am concerned that there is no reasonable probability of them reaching a verdict on that last count. They seem really frustrated and tired, and the little bit I know about this case is it's a pretty straightforward case.

. . . .

[Recess taken]

. . . .

[Court]: I've polled the jury, and I believe that the jury is hopelessly deadlocked, and I don't believe, based on their representation, that they're going to be able to reach a verdict on the one additional count. They've reached a verdict on five counts, so they have, I believe, fleshed through the evidence thoroughly.

So at this time, I'm going to ask – I'll hear from Counsel, But I'm going to ask the presiding juror to complete the verdict forms, and then we'll bring them back into court to deliver their verdicts.

[State]: And the State understands the Court's ruling, and I'll defer to the Court.

> [Defense]: We understand the Court's ruling, Your Honor. We've talked about it.

VRP (Aug. 4, 2015) at 21-24.

The jury found Diaz guilty of two counts of first degree criminal trespass, one count of first degree driving while license suspended or revoked, and one count of failure to have an ignition interlock device. The jury found Diaz not guilty with regard to one count of first degree criminal trespass and could not reach a verdict on the count of first degree possession of stolen property. The trial court declared a mistrial as to the first degree possession of stolen property count. Neither party objected to the court's declaration of a mistrial, although during the colloquy before the court declared a mistrial, set out above, Diaz's counsel asked that jury deliberations continue the following morning.

Diaz appealed his first degree criminal trespass convictions to this court, and we affirmed them. *State v. Diaz*, noted at 196 Wn. App. 1054 (2016) (unpublished), http://www.courts.wa.gov/opinions/pdf/480794.pdf.

On February 2, 2016, the State filed a second amended information, charging Diaz with second degree possession of stolen property rather than first degree. The State retried Diaz, and a jury found him guilty of second degree possession of stolen property.

Diaz appeals that conviction.

## ANALYSIS

### I. JURY DEADLOCK, DECLARATION OF A MISTRIAL, AND DOUBLE JEOPARDY

Diaz argues that his second trial, on the charge of second degree possession of stolen property, violated his constitutional right to be free from double jeopardy. He contends that the trial court abused its discretion at the first trial by determining that the jury would be unable to

4

reach a verdict within a reasonable amount of time and by ruling that a mistrial was manifestly necessary. We disagree.

A.      Legal Principles and Standard of Review

The Fifth Amendment to the United States Constitution guarantees that "[n]o person shall be . . . subject for the same offense to be twice put in jeopardy of life or limb." Article I, section 9 of the Washington Constitution similarly guarantees that "[n]o person shall . . . be twice put in jeopardy for the same offence." Our Supreme Court has held that "'[t]he federal and state [double jeopardy] provisions afford the same protections and are identical in thought, substance and purpose.'" *State v. Strine*, 176 Wn.2d 742, 751, 293 P.3d 1177 (2013) (alteration in original) (quoting *State v. Ervin*, 158 Wn.2d 746, 752, 147 P.3d 567 (2006)). As an issue implicating a constitutional right, a double jeopardy claim may be raised for the first time on appeal. *Strine*, 176 Wn.2d at 751; RAP 2.5(a)(3).

The double jeopardy clause applies in circumstances where "(1) jeopardy has previously attached, (2) jeopardy has terminated, and (3) the defendant is in jeopardy a second time for the same offense in fact and law." *Strine*, 176 Wn.2d at 752. Jeopardy attaches after the jury has been selected and sworn. *Id*. The issue in the present case involves whether jeopardy terminated at the conclusion of Diaz's first trial. As relevant, jeopardy may terminate "when the court dismisses the jury without the defendant's consent and the dismissal is not in the interest of justice." *Id*.

Our Supreme Court has held that "'[a] hung jury is an unforeseeable circumstance requiring dismissal of the jury in the interest of justice,'" *id.* at 753 (quoting *Ervin*, 158 Wn.2d at 753), and that "'a jury which, after a reasonable time, cannot arrive at a verdict, may be

discharged and the defendant tried again.'" *Id*. (quoting *State v. Connors*, 59 Wn.2d 879, 883, 371 P.2d 541 (1962)). Our Supreme Court has also cautioned that if a jury is "unable to reach a verdict after protracted and exhausting deliberations," and is not discharged, "there exists a significant risk that a verdict may result from pressures inherent in the situation rather than the considered judgment of all the jurors." *State v. Jones*, 97 Wn.2d 159, 163-64, 641 P.2d 708 (1982).

To properly discharge a deadlocked jury, "[t]he disagreement between the jurors must be evident from the record." *Strine*, 176 Wn.2d at 753 (citation omitted). We do not engage in a "mechanical" review of a trial court's exercise of discretion in determining whether jury deadlock warrants a mistrial. *Strine*, 176 Wn.2d at 755. Rather, we review whether "there [was] a factual basis for the exercise of the discretion to discharge [the] jury." *Jones*, 97 Wn.2d at 164. Further, "'if the jury, through its foreman, and of its own accord, acknowledges that it is *hopelessly deadlocked*, there would be a factual basis for discharge if the other jurors agreed with the foreman.'" *Strine*, 176 Wn.2d at 756 (quoting *Jones*, 97 Wn.2d at 164).[2]

We afford "great deference" to a trial court's decision to declare a mistrial, and we review the decision for an abuse of discretion. *Id*.; *State v. Fish*, 99 Wn. App. 86, 91, 992 P.2d

---

[2] In briefing, Diaz cites to *State v. Robinson*, 146 Wn. App. 471, 479-80, 191 P.3d 906 (2008), for our standard of review regarding a mistrial ordered over the defendant's objection. Based on *Robinson*, Diaz argues that the trial court: (1) acted precipitously by failing to give defense counsel a full opportunity to explain his position, (2) failed to consider his interest in having the trial concluded in a single proceeding, and (3) failed to consider alternatives to a mistrial. However, *Robinson* establishes our standard of review with regard to "whether *a State-initiated* mistrial was properly based on manifest necessity." 146 Wn. App. at 479 (emphasis added). In this case, the State did not seek a mistrial. Rather, the trial court declared a mistrial because the jury was unable to reach a verdict on one count. Therefore, we follow *Strine* and review the trial court's decision to declare a mistrial for an abuse of discretion.

505 (1999). A court abuses its discretion if its decision is manifestly unreasonable or is exercised on untenable grounds or for untenable reasons. *State v. Rohrich*, 149 Wn.2d 647, 654, 71 P.3d 638 (2003). A decision is based on untenable grounds or made for untenable reasons if it rests on facts unsupported by the record or was reached by applying the wrong legal standard. *Id.* A decision is manifestly unreasonable if the court, despite applying the correct legal standard to the supported facts, reaches an outcome that is outside the range of acceptable choices, such that no reasonable person could arrive at that outcome. *Id.*

B.      Jury Deadlock and Declaration of Mistrial

Under the principles just discussed, Diaz's claim that the second trial placed him in double jeopardy depends on whether jeopardy terminated at the close of his first trial. *Strine*, 176 Wn.2d at 752. That, in turn, depends on whether the court in his first trial abused its discretion by declaring a mistrial and discharging the jury. *Id.* at 753, 756; *see also Fish*, 99 Wn. App. at 91. If the court did not abuse its discretion in doing so, then jeopardy did not terminate, and the second trial did not place Diaz in double jeopardy.

As a threshold matter, the State argues that Diaz should have been required to raise his double jeopardy claim in his direct appeal from his first trial and that he is improperly attempting to litigate matters that were subject to appellate review after his first trial. This argument fails for a number of reasons. First, nothing in Diaz's first trial by itself put him in double jeopardy. Only with the second proceeding was Diaz arguably put in jeopardy twice.

Second, whether the second trial placed Diaz in jeopardy a second time depends on whether jeopardy terminated at the close of his first trial. Thus, in order to adjudicate the double jeopardy claim, we must determine whether the court in the first trial properly declared a mistrial

and discharged the jury. The propriety of the mistrial, therefore, is a necessary element in deciding the double jeopardy challenge, a matter which is properly before us. In addition, RAP 2.4(b) states that "[t]he appellate court will review a trial court order or ruling not designated in the notice, including an appealable order, if (1) the order or ruling prejudicially affects the decision designated in the notice." Our Supreme Court has held that a declaration of a mistrial is a decision that prejudicially affects the final decision in a second trial designated for appeal because "[t]he second trial would not have occurred absent the trial court's decision." *Adkins v. Alum. Co. of Am.*, 110 Wn.2d 128, 134, 750 P.2d 1257 (1988). For these reasons, we now turn to whether the court properly declared a mistrial and discharged the jury.

Diaz contends that the trial court abused its discretion and acted precipitously by declaring a mistrial without providing Diaz's trial counsel "a full opportunity to explain his position." Br. of Appellant at 9. Diaz cites *State v. Robinson*, 146 Wn. App. 471, 191 P.3d 906 (2008), for the proposition that the court must not act precipitately, but, as shown in footnote 2, above, *Robinson* is not apt as a source of standards for this mistrial. Instead, the governing standards are those set out in *Strine* and other cases discussed above.

The record does not show that the speed with which the court acted denied defense counsel a full opportunity to explain his position. At trial, Diaz's counsel suggested giving the jury an additional day to deliberate, but noted that he was "a little bit concerned that after polling them, none of them believe they can reach a verdict in a reasonable amount of time." VRP (Aug. 4, 2015) at 22. The court only declared a mistrial after giving defense counsel the opportunity to argue for his position and after individually asking each juror whether there was a reasonable probability of reaching a verdict in a reasonable amount of time and receiving the answer of "no"

8

from each juror. The status of the jury is evident from the record, *Strine*, 176 Wn.2d at 753, and the court's calling a mistrial rested on a factual basis as required by *Jones*, 97 Wn.2d at 164. Diaz has not demonstrated that the trial court acted precipitously or that it deprived him of a full opportunity to make his case.

Diaz next asserts that the trial court abused its discretion by failing to consider Diaz's "'interest in having the trial concluded in a single proceeding.'" Br. of Appellant at 10 (quoting *Robinson*, 146 Wn. App. at 479-80). To the extent this criterion even applies, *see* footnote 2 above, Diaz does not explain how his interest in having a trial concluded in a single proceeding should have affected the trial court's determination that the jury was deadlocked in this case. Further, the trial court noted on the record that on the final day of the first trial, the jurors "seem[ed] really frustrated and tired." VRP (Aug. 4, 2015) at 23. This observation suggests that the trial court did attempt to balance Diaz's interest in having his trial concluded in a single proceeding against the risk that further deliberations would induce the jury to arrive at an expedient verdict rather than a reasoned one. *Jones*, 97 Wn.2d at 163-64. Therefore, because the record reflects that the trial court reasonably considered Diaz's interest in having the trial concluded in a single proceeding, this argument fails.

Diaz also claims that the trial court abused its discretion in declaring a mistrial because it failed to consider alternatives to a mistrial. However, our Supreme Court has held that a trial court is not required "to consider any other means of breaking the impasse," in determining whether a jury is deadlocked. *Strine*, 176 Wn.2d at 755. In addition, the record in this case suggests that the trial court did consider the alternative of instructing the jury to continue

deliberating, as both the State and defense counsel informed the court that they would be willing to have the jury deliberate for another day. Therefore, this argument fails.

Based on the circumstances of his first trial, Diaz has failed to demonstrate that the trial court abused its discretion by determining that the jury was deadlocked and declaring a mistrial. In the first trial, after hearing a day-and-a-half of testimony, the jury deliberated for over eight hours. On August 4, 2015, the jury, on its own initiative, sent a message to the court that stated it was deadlocked on a single count. The court asked the presiding juror if she thought the jury could reach a verdict on the remaining count in a reasonable amount of time and the presiding juror responded negatively. The court then asked each individual juror whether he or she believed that the jury could reach a verdict on the remaining count in a reasonable amount of time, and each juror responded negatively. These circumstances are similar to those described by our Supreme Court in *Strine,* that "'if the jury, through its foreman and of its own accord, acknowledges that it is *hopelessly deadlocked*, there would be a factual basis for discharge if the other jurors agree with the foreman.'" 176 Wn.2d at 756 (alteration in original) (quoting *Jones*, 97 Wn.2d at 164). Therefore, the trial court did not abuse its discretion by finding that the jury was deadlocked in Diaz's first trial and declaring a mistrial.

Because that mistrial and discharge of the first jury was valid and was in the interests of justice, jeopardy did not terminate at the close of the first trial under *Strine*, 176 Wn.2d at 752. Therefore, the second trial did not subject Diaz to double jeopardy.

No. 48821-3-II

## II. APPELLATE COSTS

Diaz asks us to deny any appellate costs the State requests. Under RAP 14.2, if the State decides to file a cost bill, Diaz may challenge that on the basis of inability to pay. With that remedy available, we decline to decide this issue.

## CONCLUSION

Diaz's second trial did not subject him to double jeopardy. Therefore, we affirm his conviction of second degree possession of stolen property.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

BJORGEN, C.J.

We concur:

MELNICK, J.

SUTTON, J.

11