IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 35412-1-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| DALLIN D. FORT, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, C.J. — Dallin Fort appeals his conviction for two counts of first degree rape of a child. He argues the trial court violated the constitutional prohibition on double jeopardy when it ordered a mistrial based only on "good cause" when the Washington Constitution permits retrial only in cases of "extraordinary and striking circumstances." The State responds that Mr. Fort waived this argument by jointly moving for a mistrial.

The record was unclear in this respect, so we remanded the matter to the trial court for clarification of the record. The trial court clarified the record and confirmed that Mr. Fort consented to a mistrial. We generally affirm, but remand for the trial court to strike various community custody conditions and to strike the DNA[1] collection fee and the criminal filing fee.

_____

[1] Deoxyribonucleic acid.

FACTS

Mr. Fort's first trial in 2006 resulted in his conviction on two counts of first degree rape of a child. *State v. Fort*, 190 Wn. App. 202, 213, 360 P.3d 820 (2015). Some time later, Mr. Fort filed a personal restraint petition, and this court ordered a new trial based on a public trial rights violation. *Id.* at 219.

Mr. Fort was retried in October 2016, but the jury could not reach a unanimous verdict. The judge asked the presiding juror if, given more time, was there a reasonable probability of reaching a verdict. The juror responded, "No." Report of Proceedings (RP) at 240. The judge asked the court reporter to take the jury to the jury room. The report of proceedings reflects the court then rescheduled the matter for a new trial.

A written order entered contemporaneously states, "The Parties moved the court for: an order declaring a mistrial . . . the court finds that: good cause exists. Trial was had in the matter and the jury was unable to reach a verdict. . . . IT IS ORDERED that: a mistrial is declared." Clerk's Papers (CP) at 66. The written order reflects it was presented by the State and approved by defense counsel.

The case was set for a new trial in 2017. The State retried Mr. Fort and obtained a conviction on two counts of first degree rape of a child.

*Community Custody Conditions and Legal Financial Obligations (LFOs)*

The sentencing court ordered that Mr. Fort "not possess or consume alcohol or go to places where alcohol is the chief commodity for sale." CP at 107. The court also ordered that he "obtain a written substance abuse evaluation with a qualified provider approved by [his] assigned community corrections officer and complete all recommended treatment including attending AA [Alcoholics Anonymous] and/or NA [Narcotics Anonymous] support groups and obtaining a sponsor." CP at 107. The court also required him to submit to random "UA/BA" (urinalysis and blood-alcohol) monitoring. CP at 107. The court imposed various LFOs, including a $100 DNA collection fee and a $200 criminal filing fee.

Mr. Fort appeals.

## ANALYSIS

### A.    DOUBLE JEOPARDY

Mr. Fort claims the trial court violated the constitutional prohibition on double jeopardy when it declared a mistrial based only on "'GOOD CAUSE'" when the Washington Constitution permits a retrial only in cases of "'EXTRAORDINARY AND STRIKING CIRCUMSTANCES.'" Br. of Appellant, at 6. The State, citing the October 2016 written order, argues Mr. Fort waived this argument by jointly moving for a mistrial.

No. 35412-1-III
*State v. Fort*

The report of proceedings was inconsistent with the written order.  It shows that the court reporter escorted the jury out of the courtroom, and the trial court then discussed new trial dates.  The report of proceedings does not show Mr. Fort jointly requesting a mistrial.

Because the record is inconsistent, we transferred the appeal to the trial court for a hearing.  We instructed the trial court to hold a reference hearing for purposes of answering the following:

> 1.    Precisely how and at what point was the jury discharged;
> 2.    Were there discussions between the court and counsel concerning declaring a mistrial that are not reflected in the transcribed record and, if so, what does each party contend was said, and what does the court find was said;
> 3.    If there were discussions off the record, who was present, and where did those discussions occur.

Order Transferring Appeal to Superior Court for Reference Hearing, *State v. Fort*, No. 35412-1-III (Wash. Ct. App. Oct. 29, 2018) at 2.

*November 2018 Trial Court Hearing*

The trial court conducted a reference hearing on November 8, 2018.  Present at the hearing were Mr. Fort, his trial attorney, and the State's trial attorney.  Notice of the hearing was given to both appellate counsel.  Neither appellate counsel appeared.

4

The trial court explained the reason for the reference hearing. It then stated it had reviewed the transcript of the day in question, the clerk's minutes, the court file, and the judicial assistant's day planner for that day. The trial court then stated its recollection of events. The State agreed with the recollection. Mr. Fort's trial counsel said he could not recall the events, and clarified he was appearing as a witness, not as counsel for Mr. Fort. The trial court asked for Mr. Fort's recollection. Mr. Fort described his recollection as consistent with the report of proceedings and denied that he or his attorney agreed to a mistrial.

Mr. Fort noted he was not represented by counsel at the hearing and was uncomfortable with the process. The trial court commented that appellate counsel was not present at the trial and would not be able to assist in answering the Court of Appeals' questions.

The trial court issued a written opinion in response to this court's questions. We quote the pertinent portions of the trial court's opinion:

> The Court then proceeded with the colloquy which was held on the record. After the presiding juror indicated they could not reach a verdict, the Court then excused the jury to the jury room to await further instructions from the Court.
> The *COURT REPORTER* . . . was asked to take the jury to the jury room as the Judicial Assistant had to leave for an appointment just after bringing the jury into the courtroom. . . .

5

> . . . As [the court reporter] led the jury out, the clerk announced to the courtroom to please rise for the jury. . . .
>
> As soon as the jury was out of the courtroom, the Court asked all parties to be seated. . . .
>
> *The Court then asked if there was any objection to declaring a mistrial. There was no objection from either attorney nor from Mr. Fort. The Court asked the attorneys to prepare an order and a scheduling order for a new trial. . . .*
>
> . . . .
>
> It should be noted that once the Court asked everyone to be seated and the Court sat down at the bench, the Court's computer screen block[ed] the view of the court reporter's area. The Court had forgotten that the court reporter escorted the jury to the jury room. No one noticed that she was no longer present taking down what was said.
>
> At one point, the court reporter came back into the courtroom and start[ed] her transcript with the discussion of the trial date.
>
> . . . .
>
> [After asking the attorneys if they wished to speak with the jury, the Court] proceeded to the jury room to release the jury from the case . . . .

CP at 134-35 (emphasis added).

The trial court's findings explain the gap in the record. It explains why the gap occurred and is consistent with the agreed order declaring a mistrial.

Mr. Fort filed a motion for remand for a new reference hearing. He argued he was unrepresented at the November 2018 hearing, and the process used by the trial court deprived him of a chance to make a full record of what he believed occurred on the day in question. We reviewed the transcript of the hearing. The transcript reflects that the trial court asked Mr. Fort to provide his recollection of events, and Mr. Fort provided his

6

recollection of events. At the direction of the undersigned, our divisional clerk denied

Mr. Fort's motion and responded:

> The prior RAP 16.12 order remanding for a reference hearing should have been denominated as a RAP 9.10 order correcting the record. The purpose of the order was for the trial court to enter findings in lieu of the missing recording. As reflected by the transcript, the procedure contemplated by this court was substantially followed in that everyone was given an opportunity to say what they believed occurred during the missing recording . . . .

Clerk's Ruling, *State v. Fort*, No. 35412-1-III (Wash. Ct. App. Dec. 13, 2018).

Mr. Fort then filed a motion to supplement the record with his declaration and a

declaration of Lila Fort. Both declarations, although more detailed, are consistent with

what Mr. Fort said during the November 2018 hearing. The State objected to Mr. Fort's

motion.

RAP 9.11(a) sets forth six requirements that must be met before we will allow

additional evidence on review. One requirement is that the additional evidence will

probably change the decision being reviewed. RAP 9.11(a)(2). We conclude that the

declarations would not change the decision being reviewed.

Nevertheless, to serve the ends of justice, we may waive the rules of appellate

procedure. RAP 1.2(c). We are bothered by the fact that Mr. Fort was not represented at

the November 2018 hearing. We agree with the trial court's assessment that the presence

of appellate counsel would not have assisted the trial court in answering our questions.

However, Mr. Fort is entitled to counsel at all critical stages of his case. *State v.*

*Robinson*, 153 Wn.2d 689, 694, 107 P.3d 90 (2005). Here, he did not have counsel at the

hearing. To ameliorate this, we grant Mr. Fort's request to supplement the record.

Typically, when we grant a motion to add evidence, we remand to the trial court

for it to consider the new evidence and enter additional findings. RAP 9.11(b). But we

are certain the two declarations would not cause the trial court to alter its findings. The

two declarations are inconsistent with the contemporaneous agreed order.[2] That order,

signed by defense counsel, states that the parties jointly moved for a mistrial.

Because we are certain that the two declarations would not cause the trial court to

alter its recent findings, we do not remand for the trial court to consider the declarations

and enter additional findings.

---

[2] The report of proceedings shows that the court declared a recess as the court reporter escorted the jury back to the jury room. *See* RP at 240, ll. 18-25. This is puzzling. This implies that the trial judge also left the courtroom. But the report of proceedings makes clear that the trial judge remained: There is no announcement to "All rise" before the transcript resumes with the discussion of trial dates. *See* RP at 240, ll. 23-25; RP at 241, ll. 1-3. It is obvious that the trial judge did not leave the courtroom and that discussions occurred between the bottom lines of RP at 240 and the top line of RP at

*Analysis of Double Jeopardy Claim*

The United States Constitution and the Washington Constitution prohibit a defendant from being tried for the same offense twice. U.S. CONST. amend V; CONST. art. I, § 9; *State v. Robinson*, 146 Wn. App. 471, 477-78, 191 P.3d 906 (2008). This rule protects the defendant's rights to have his or her trial completed by a particular tribunal. *Robinson*, 146 Wn. App. at 478. The article I, section 9 double jeopardy provision has been construed to provide protection identical to that provided under the United States Constitution. *State v. Larkin*, 70 Wn. App. 349, 353, 853 P.2d 451 (1993).

"Once a jury has been empanelled and sworn, jeopardy attaches." *Robinson*, 146 Wn. App. at 478. "Once jeopardy has attached, the court must determine whether a retrial is barred." *Id.*

When the defendant requests a mistrial, double jeopardy does not bar a retrial. *Id.* at 478-79. However, when a mistrial is without the consent of the defendant, the court must find manifest necessity to avoid violating double jeopardy. *Id.* at 479. Here, the trial court declared a mistrial only after Mr. Fort consented. We, therefore, reject Mr. Fort's claim that his later conviction was barred by double jeopardy.

---

241. There is a clear gap in the transcribed record between those pages.

B.      COMMUNITY CUSTODY CONDITIONS

Mr. Fort contends the trial court exceeded its authority by ordering various community custody conditions. The challenged conditions prohibit him from consuming alcohol, prohibit him from possessing alcohol, and prohibit him from going to places where alcohol is the chief commodity for sale. These conditions also require him to undergo urinalysis and blood alcohol testing, and require him to undergo a substance abuse evaluation and comply with any treatment recommendations.

The State first responds that Mr. Fort may not challenge the community custody conditions because he did not object to them below. We disagree. An unlawful sentence may be challenged for the first time on appeal. *State v. Ford*, 137 Wn.2d 472, 477, 973 P.2d 452 (1999).

The State also responds that former RCW 9.94A.713(1) (2001) grants the Sentencing Review Board (the Board) and the Department of Corrections (DOC) authority to impose additional rehabilitative conditions of community custody. That may be so. But Mr. Fort challenges the conditions imposed on him by the court, not the Board or the DOC. We express no opinion on the propriety of conditions the Board or the DOC may impose.

The Sentencing Reform Act of 1981 (SRA), chapter 9.94A RCW, governs a court's imposition of community custody conditions. *State v. Coombes*, 191 Wn. App. 241, 250, 361 P.3d 270 (2015). Any sentence imposed under the SRA must be in accordance with the law in effect when the offense was committed. *Id.*; RCW 9.94A.345. Mr. Fort's crimes were committed between June 1, 2003, and September 1, 2003, so we look to the SRA in effect during that time.

### 1. *The prohibition on consuming alcohol is valid.*

Former RCW 9.94A.712(6)(a) (2001) permitted a sentencing court to enter conditions under former RCW 9.94A.700(5) (2002), which provided in pertinent part:

> As a part of any terms of community placement imposed under this section, the court may also order one or more of the following special conditions:
> . . . .
> (d) The offender shall not consume alcohol.

Therefore, the prohibition against consuming alcohol was lawful under the SRA at the time the offenses were committed.[3]

---

[3] In *State v. Jones*, 118 Wn. App. 199, 204, 76 P.3d 258 (2003), the defendant challenged the community custody condition prohibiting alcohol consumption. Applying the 1988 amendments to the SRA, the court affirmed the condition, reasoning "the 1988 legislature manifested its intent that a trial court be permitted to prohibit the consumption of alcohol regardless of whether alcohol had contributed to the offense." *Id.* at 206.

> 2. *The prohibitions on possessing alcohol and going to places where alcohol is the chief commodity for sale are not crime related and, thus, are invalid.*

Former RCW 9.94A.700(5)(e) authorizes a court to enter crime-related prohibitions. A "crime-related prohibition" is "an order of a court prohibiting conduct that directly relates to the circumstances of the crime for which the offender has been convicted." Former RCW 9.94A.030(12) (2002). A condition is not crime related if there is no evidence linking the prohibited conduct to the offense. *State v. O'Cain*, 144 Wn. App. 772, 775, 184 P.3d 1262 (2008).

In *O'Cain*, the defendant was convicted of rape, and the sentencing court prohibited him from accessing the Internet without prior approval from his supervising community corrections officer. *Id.* at 774. We struck down the condition because the trial court made no finding that Internet use contributed to the defendant's crime. *Id.* at 775.

Here, the trial court did not make any finding that alcohol or any other drug contributed to Mr. Fort's crime, the risk of reoffending, or the safety of the community. Therefore, the trial court erred in prohibiting Mr. Fort from possessing alcohol and from going to places where alcohol is the chief commodity for sale. In addition, the trial court

12

erred in requiring Mr. Fort to submit to random UA/BA monitoring, and to obtain a written substance abuse evaluation and to follow all treatment recommendations.

      C.      STATEMENT OF ADDITIONAL GROUNDS FOR REVIEW (SAG)

Mr. Fort submits two arguments in his SAG. In an SAG, this court only considers arguments that are not repetitive of the party's briefing. RAP 10.10(a).

*Additional Ground 1—Double Jeopardy*

Mr. Fort contends the trial court erred by not considering factors discussed in *United States v. Bates*, 917 F.2d 388, 396 (9th Cir. 1990), which concerns double jeopardy. Whether Mr. Fort's retrial violated double jeopardy principles was properly raised and argued in his opening brief. We decline to revisit the issue in the SAG.

*Additional Ground 2—Ineffective Assistance of Counsel*

Mr. Fort contends he was denied effective assistance of counsel when counsel did not move to dismiss once the jury was discharged. To prevail on a claim of ineffective assistance of counsel, a defendant carries the burden of demonstrating (1) the attorney's performance was deficient—that is, it fell below an objective standard of reasonableness, and (2) the deficiency prejudiced the accused—that is, absent the deficiency there is a reasonable probability that the result of the proceeding would have been different. *State v. Humphries*, 181 Wn.2d 708, 719-20, 336 P.3d 1121 (2014). Mr. Fort's argument

13

presupposes that the trial transcript is a complete record and that he did not have an

opportunity to object to a mistrial. We reject Mr. Fort's argument because, at the remand

hearing, the trial court found that he chose not to object to a mistrial. Mr. Fort has not

shown that his attorney's performance fell below an objective standard of reasonableness.

D.      MOTION TO STRIKE DNA COLLECTION FEE AND CRIMINAL FILING FEE

Mr. Fort filed a motion to reverse two LFOs. Relying on *State v. Ramirez*, 191

Wn.2d 732, 426 P.3d 714 (2018), he argues we should order the trial court to strike the

$100 DNA collection fee and the $200 criminal filing fee.

The *Ramirez* court held that House Bill 1783 applies prospectively to cases on

direct appeal. *Id.* at 747. House Bill 1783 establishes that the DNA collection fee is no

longer mandatory if the offender's DNA has already been collected. *Id.* House Bill 1783

also prohibits imposing the $200 criminal filing fee on indigent defendants. *Id.*

Here, Mr. Fort likely had his DNA collected in 2006 after his initial conviction.

He is also indigent for purposes of this appeal. We, therefore, grant Mr. Fort's motion

and direct the trial court to strike the $100 DNA collection fee and the $200 criminal

filing fee.[4]

---

[4] In *State v. Thibodeaux*, __ Wn. App. 2d __, 430 P.3d 700 (2018) (published), http://www.courts.wa.gov/opinions/pdf/768182.pdf, Division One held that a criminal defendant must establish that his or her DNA has been collected before the fee can be

No. 35412-1-III
*State v. Fort*

E.    APPELLATE COSTS

Mr. Fort asks that the State not be awarded appellate costs in the event it substantially prevails. The State has substantially prevailed. In accordance with RAP 14.6(a), we defer the decision of appellate costs to our clerk or commissioner.

Affirm in part, remand to strike DNA collection fee, criminal filing fee, and certain community custody conditions.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Lawrence-Berrey, C.J.

WE CONCUR:

Fearing, J.                          Pennell, J.

---

waived. A prior felony, in itself, is strong evidence that the DOC has collected a DNA sample from the defendant.

Since July 1990, all felony convictions require defendants to provide a sample of their DNA. LAWS OF 1989, ch. 350, § 4; RCW 43.43.754. Thus, for a defendant with a prior felony, it is reasonable to presume that the DOC has already collected a DNA sample from the defendant. Where the defendant has a prior felony, an appellate court should simply direct the trial court to strike the collection fee.

15